Orange,
March,
1843.
___
Admr's of
Lyman
v.
Little et al.

Administrators of Elias Lyman *v.* Josiah Little, Erastus Chamberlain, William Atkinson and AnnaAtkinson.

( *In Chancery.* )

A decree of foreclosure will not be made against a defendant who holds by an older and adverse title to the mortgagor and mortgagee.

A mortgage will not be corrected as to description, on the ground of mistake, unless on full proof.

When a mortgagee has been compelled to pay an existing incumbrance, as well on the lands mortgaged to him, as on other lands held by a defendant, the latter will be decreed to pay his proportion.

A decree in chancery against an original mortgagor is evidence that the debt is not paid, so as to prevent the operation of the statute of limitations; and so is an acknowledgment of a defendent, who holds adverse to the mortgagee, made within fifteen years.

A bill and decree in chancery, stated in a bill, and admitted in the answer, need not be filed as an exhibit.

A decree of a chancellor as to cost, will rarely be altered, on appeal.

This was an appeal from a decree of the court of chancery.

The orators in their bill, set forth and charged, in substance, that, to secure the payment of a note of hand, to Ephraim Lacy, of $306, on or before the 1st of October, 1807, Raymond Chamberlain, on the 15th of September, 1806, mortgaged to said Lacy, among other lands in Newbury, one half of lot No. 2, one eighth of lot No. 1, and one eighth of lot No. 9, in Musquash Meadow in said Newbury; that said Raymond Chamberlain and Joseph Chamberlain, being tenants in common of said lot No. 2, and of one fourth of said lot No. 1, did, in the year 1811, by a parol agreement, exchange the same with Edward Little, son and agent of Josiah Little, for three fourths of said lot No. 9, they owning the other fourth, and three acres of lot No. 10; and that, in pursuance of said agreement, each of the parties entered into possession of the land so agreed to be received in exchange;—

That, on the 15th of July, 1815, Raymond Chamberlain conveyed in fee, to Erastus Chamberlain, the whole of the premises embraced in the mortgage to Lacy, informing him of the existence of said mortgage, and, at the same time, taking from him a writing, agreeing to redeed the premises, upon being indemnified for the payment of a certain sum of

money for him to Elias Lyman and Miles Olcutt; and that, on the 20th of February, 1816, Raymond Chamberlain, and the heirs of said Joseph Chamberlain, who had deceased, quit claimed to Erastus Chamberlain all their right and title in the aforesaid premises ;—

ORANGE,
*March*,
1843.

Admr's of
Lyman
*v.*
Little *et al.*

That, on the 7th of March, 1818, Erastus Chamberlain mortgaged to Elias Lyman, the intestate, among other lands, the said lot No. 2, and one quarter of each of said lots No. 1 and 9, to secure the payment of a note of $2000 payable on demand, with interest ; that the interest had been paid, and endorsed on said note up to the 8th of September 1824, but that the principal and balance of interest remained unpaid ;—

That, in March, 1831, Lacy brought his bill to foreclose his said mortgage, against Erastus Chamberlain and the said Elias Lyman ; that, pending said suit, Lyman deceased, and the orators were appointed administrators and made parties, as such ; that, in March, 1835, Lacy obtained a decree of foreclosure against said Erastus and the orators, for $828.24 debt, and $99.08 costs, which the orators paid on the 24th of March, 1835, in pursuance of said decree ; that the intestate, when he took said mortgage of lot No. 1, and a quarter of lot No. 2, did not know that they had been exchanged to Edward Little, or that he was in possession of the same, or of any part of the mortgaged premises ; and that the said premises were not of sufficient value to pay both of said mortgages.

And the orators further alleged, that, on the 23d of July, 1817, the said Edward Little conveyed, by deed of quit claim, to the said Josiah Little, all his lands in this state, without giving any particular description thereof, and that he held them in trust for said Josiah ; that, on the 24th of September, 1827, the said Josiah, by his deed of that date, but not acknowledged and recorded, until the 10th of February, 1831, conveyed to Josiah Little, Jun. (one of the present defendants ) said lots No. 1, and 2 ; that, at the time said deed was executed, both of said Littles knew of the existence of the mortgages to Lacy and Lyman, and that they covered lot No. 2, and one fourth of No. 1 ; that Edward Little knew that the mortgage to Lacy thus extended to Nos. 1 and 2, when he received them in exchange for three fourths of No.

Orange,
March,
1843.

Admr's of
Lyman
v.
Little et al.

9, in 1811, and that Josiah Little, senior, knew the same, when he took the conveyance from Edward Little, in 1817.

And the orators further alleged that, on the 28th of January, 1826, Erastus Chamberlain quit claimed to Josiah Little, senior, all his interest in the lands mortgaged to Lyman, and also to lots No. 9 and 10, which Raymond and Joseph Chamberlain had received in exchange for Nos. 1 and 2—which deed was executed to secure a debt of about $1000 ; that, on the 28th of August, 1829, Josiah Little, senior, reconveyed to Erastus Chamberlain, all the said premises excepting the three fourths of No. 9, and the part of No. 10 which had been received in exchange for 1 and 2; that, on the 31st of March, 1835, Erastus Chamberlain, in order further to secure the payment of said $2000 note, conveyed to one of the orators, for the benefit of them all, as administrators of Lyman, those parts of Nos. 9 and 10, received in exchange as aforesaid.

And the orators further alleged that Josiah Little, senior, deceased, in 1930, and Josiah Little, Jr., (present defendant) was appointed his administrator ; and that, on the 16th of March, 1832, the heirs of said deceased Little conveyed all their interest in Nos. 9, and 10, received from the Chamberlains in exchange for 1 and 2, to Anna Atkinson, wife of William Atkinson (defendants in this suit.)

And the orators further alleged, that in and by the deed from Raymond Chamberlain and the heirs of Joseph Chamberlain, to the said Erastus, lot No. 2, and one fourth of No. 1, were specifically conveyed, but that they were informed that, under said deed, Erastus took possession of lot No. 9, and the part of No. 10, received from Edward Little in exchange for 1 and 2, instead of taking possession of 1 and 2—of which fact the intestate had no knowledge when he took the mortgage from Erastus, nor during his life time ; and that there was a mistake in drawing said mortgage—the said Erastus intending to convey No. 9, and part of No. 10, received in exchange for 1 and 2 — which mistake was known to Josiah Little, senior, when No. 9 and 10 were quit-claimed to him by Erastus in 1826.

And the orators further alleged, that Josiah Little, senior, in his life time, claimed to hold lot No. 2, and one fourth of lot No. 1, under, and by virtue of, said parol exchange be-

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little et al.

tween Edward Little and R. and J. Chamberlain, and such parts of Nos. 9 and 10, as said Edward passed, in exchange, to R. and J. Chamberlain, by virtue of the deed from Erastus Chamberlain; that defendant, Little, claimed title in Nos. 1 and 2, under said deed from his father, Josiah Little senior, in 1827; that Atkinson and his wife claimed title in Nos. 9 and 10, under said deed from the heirs of J. Little senior, and that Erastus Chamberlain had continued in the open occupancy of Nos. 9 and 10 ever subsequent to his conveyance thereof to J. Little senior, in 1826.

The orators thereupon prayed, that the defendants, Erastus Chamberlain and Josiah Little, be decreed to pay to them the sum paid by them on the Lacy mortgage, with interest, or be foreclosed of all equity of redemption in the premises contained in said mortgage; and that all the defendants be decreed to pay the orators the sum due in equity on the mortgage executed by Erastus Chamberlain to the intestate, or be foreclosed of all equity of redemption in the premises therein conveyed;—or, in case the court should be of opinion that said mortgage deed to the intestate could not cover and hold lot No. 2, and one fourth of lot No. 1, that then, said deed might be corrected, according to the intention of said Erastus, so as to extend to, and cover, such parts of No. 9 and 10, as were received in exchange for 1 and 2; and that Atkinson and wife might be foreclosed of all equity of redemption in said Nos. 9 and 10, and that they should be decreed to release the same,—and for further relief.

The defendant, Little, in his answer, admitted the execution of the mortgage to Lacy in 1806 — and the exchange of lands, in 1811, between the Chamberlains and Edward Little, as stated in the bill, and that the parties went into immediate possession, according to the exchange. And he alledged, that, in 1812, said Edward was in the open and visible possession of lots No 1 and 2, and so continued in possession until the 29th of May, 1815, claiming to own them, when he put Josiah Little senior, into possession, under a deed of that date, and on the 23d of July, 1817, he again deeded the same, with other lands, to the said Josiah, who continued in the open and visible possession thereof, claiming to own the same, until the month of September 1827, when he deeded said lots to Josiah Little the defen-

ORANGE,
March,
1843

Admr's of
Lyman
v.
Little et al.

dant, who had been in possession thereof, claiming to own them, until the filing of his said answer.

The said defendant, in his answer, further alledged that he moved into Newbury in 1813, when Joseph Chamberlain was in possession of lot No. 9, and three acres of No. 10, and so continued in possession until his death in 1815 ; and he admitted the conveyance from Raymond Chamberlain to Erastus Chamberlain, in 1815, and from the said Raymond and the heirs of Joseph Chamberlain, to said Erastus, in 1816, as stated in the bill. He also alleged, that, in 1826 or 1827, Erastus Chamberlain informed him that he knew of the Lacy mortgage when Raymond deeded to him in 1815, but supposed it was paid ; and he alleged that, when that deed was executed, Josiah Little, senior, was in the adverse possession of lots No. 1 and 2, and that he was in such possession in 1818, when the mortgage from Erastus Chamberlain to the intestate was executed, as stated in the orators bill ; and that he did not believe that any mistake in the description of land was made in said mortgage.

And said defendant further answering, admitted that, on the 25th of January, 1826, Erastus Chamberlain was in possession of lot No. 9, and about three acres of No. 10, and conveyed the same, with other lands, to Josiah Little, senior, by deed of that date, for the consideration of $800 ; and that, in August, 1829, the said Little reconveyed to the said Erastus, the lands thus conveyed, except Nos. 9 and 10 ; but he alleged that said Erastus paid nothing, and was to pay nothing, for said deed ; that, Josiah Little, senior, and the defendant who acted as his agent, considered that the lands thus reconveyed were encumbered to their full value by the mortgages to Lacy and Lyman, and that the only object in reconveying was to avoid being joined in a suit, threatened by Lacy on the mortgage to him.

And the said defendant further admitted, that the proceedings in the suit on the Lacy mortgage were as stated in the bill, and that the orators paid to Lacy the sums of money therein set forth ; that when he, the defendant, received from said Josiah, senior, the deed of the 24th of September, 1827, of lots Nos. 1 and 2, he and the said Josiah knew of the existence of the Lacy and Lyman mortgages, and that they covered No. 1, and one fourth of No. 2. He further

ORANGE,
*March,*
1843.

Admr's of
Lyman
*v.*
Little *et al.*

admitted the death of said Josiah in 1830, and that, in 1832, his heirs conveyed Nos. 9 and 10 to Anna Atkinson, as stated in the bill; and he alleged that said Josiah, senior, did not claim to hold lot No. 2, and one fourth of No. 1, by virtue of said exchange of lands with Edward Little, in 1811, but that he did claim to hold the same by virtue of the deed or deeds from said Edward, who, the defendant denied, acted as the agent of said Josiah, senior, in making the exchange.

Atkinson and wife made answer, varying, in no essential particular, from the answer of Little.

No answer was made by Erastus Chamberlain, and the bill, as to him, was taken as confessed.

The answers of Little and Atkinson and wife were traversed, and testimony was taken, the import of which sufficiently appears in the opinion of the court.

The evidence having been taken and published, it was ordered by the court that it be referred to a master to ascertain and report the amount due upon the Lacy mortgage, and the cash value of all of lots 1 and 2, included in that mortgage, and the cash value of the other lands included in said mortgage; and also that said master ascertain and report the sum due upon the mortgage of E. Chamberlain to the intestate, and the cash value of the lands included in that mortgage. The master reported that the Lacy mortgage amounted to $1283.09, including $96.08 cost, and that the cash value of the portion of Nos. 1 and 2, included in that mortgage was $996, and of all the other lands included therein, $1075. He also reported that the cash value of all the lands included in the mortgage to the intestate was $5143. Whereupon the court decreed that the defendant Little pay to the orators, such proportion of $1323.95, (being the amount of said mortgage debt to Lacy, cost and interest) as the value of that portion of lots No. 1 and 2, included in the Lacy mortgage, bore to the value of the whole lands included therein (which proportion the court found to be $636.38), or be foreclosed of all equity of redemption in said Nos. 1 and 2. And the court further decreed that the said Erastus pay to the orators the balance of the Lacy mortgage and costs, and also the amount due upon his mortgage to the orators, &c. And it was further ordered and decreed, that,

Admr's of
Lyman
*v.*
Little *et al.*

as to the said Atkinson and wife the bill be dismissed with costs.

*Wm. Upham*, for defendants.

I. As to the rights of the orators under the Lacy mortgage: That mortgage it is true has been paid by the complainants, but for the purpose of enabling them to avail themselves of Erastus Chamberlain's subsequent mortgage of the same lands to their intestate, Lyman. The complainants now claim to stand as the assignees of the Lacy mortgage and insist that the defendant, Little, who claims but a small part of the lands covered by the mortgage, should pay them the whole amount of it, with the costs of foreclosure. This claim we resist, and contend that the orators are entitled to no relief against Little, in consequence of having paid off that mortgage.

The possession taken by Edward Little, of lots No. 1 and 2, at the time of the exchange of lands with J. and R. Chamberlain, in 1811, was *adverse* to the whole world. He entered upon, and occupied both lots as his own, acknowledging no right in any other person to interfere with his possession. His entry was not under a conveyance from Raymond Chamberlain, Lacy's mortgagor, but under the contract of exchange made with Joseph and Raymond Chamberlain. It was therefore a disseizin of Lacy; and the continued *adverse* possession of both lots, kept up by Edward Little and others claiming under him, to the present time, has issued into a right of possession upon which the defendant, Little, can stand against Lacy and all others claiming under or through him. *Livingston v. Peru Iron Co.*, 9 Wend. 511; *Wilson v. Walkins*, 3 Peter's R. 43; *Jackson v. Wheat*, 18 John's R. 40, 44; *Smith v. Loveland*, 10 Johns R. 356; *Smith v. Brutis*, 9 do. 180; *Van Dyk v. Van Buren et al.*, 1 Caine's R. 83, 90; 8 Pick. 272; *Cadwell v. Spriggs' Heirs*, 1 B. Munroe's R. 370; *Jackson v. Camp*, 1 Cow. 605, 609; *La Loimbois v. Jackson*, 8 Cow. 599; *Jackson v. Ellis*, 13 John. 120; *Ewing v. Bennett*, 11 Peters, 52; *Dexter v. Harris*, 1 Mason, 531, 536; 18 John. 355; *Robinson v. Douglas*, 2 Aiken 364.

But if we are mistaken in our view of Edward Little's possession of the lots in question, we insist, that there can be

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little *et al.*

no doubt as to the *adverse* character of Josiah Little, senior's, possession. He entered upon the lots in May, 1815, under a deed from Edward Little. His possession was open and exclusive. He claimed to own the lots, and, in September, 1827, conveyed them to Josiah Little the defendant, who has been in the open and exclusive possession of them ever since, claiming to own them. Nothing more could be necessary to constitute an adverse possession. 1 B. Munroe's R. 45.

It has been repeatedly ruled, said the court, in *Jackson* v. *Ellis,* (13 John. 120), " that an entry under *color or claim of title,* is sufficient to constitute an *adverse* holding," and in the case of *Smith* v. *Louilard,* (10 John. 356), Kent, C. J. said " that after a continued possession of twenty years under pretence or claim of right, the actual possession ripens into a right of possession, which will *toll* an entry."

In addition to the authorities already cited, *vide* the following : *Little* v. *Megguire,* 2 Greenl. 176 ; *Gookin* v. *Whitten,* 4 Greenl. 16 ; *Henry* v. *Bell,* 5 Vt. R. 393 ; *Ganson* v. *Hobart et al.,* 2 *Sumner's* R. 401, 8, 9 ; *Jackson* v. *Waford,* 7 Wend. 62 ; *Kinsell et al.* v. *Daggett et al.,* 2 Fairfield, 309 ; 5 Cowen, 74 ; 16 John. R. 293.

But again : Suppose we should treat Lacy and Edward Little as tenants in common of lots No. 1 and 2, from 1811 to 1815, what consequences would follow ? We admit the presumption is, that the possession of one tenant in common is in support of the common title of all. But it is well settled, both by the English and American cases, that this presumption may be repelled, and an adverse possession established by proof of an open claim of exclusive right. Such proof, we have in this case. Josiah Little, senior's, entry and open claim of exclusive right, under his deed from Edward Little, in 1815, was an ouster of Lacy. *Johnson* v. *Brink,* 4 Cow. R. 483 ; *La Leombois* v. *Jackson,* 8 Cow. R. 589 ; *Jackson* v. *Tibbits,* 9 Cow. R. 241, 252, 253 ; id. 530 ; 2 B. Munroe's R. 434, 435.

But another view : The orators cannot, even in equity, be treated as the assignees of the Lacy mortgage as to lots No. 1 and 2, because the mortgage to their intestate, Elias Lyman, was void as to those lots, on the ground of an actual *adverse* possession of them by Josiah Little, senior, when it

ORANGE,
*March,*
1843.

Admr's of
Lyman
*v.*
Little *et al.*

was executed and delivered. If Elias Lyman acquired no lien on lots No. 1 and 2, by his mortgage from Erastus Chamberlain, the payment of the Lacy mortgage would give him none. The lien created upon the land by the subsequent mortgage, is the sole ground upon which a court of equity treat the second mortgagee as the assignee of the first mortgage, when he pays it off for the purpose of availing himself of his own mortgage. The legal title to lots No. 1 and 2, is either in thed efendant Little, or in Raymond Chamberlain and the heirs of Joseph Chamberlain; and, as to this question, it is immaterial which.

The decree, and proceedings in chancery, had by Lacy against Raymond and Erastus Chamberlain, for the purpose of foreclosing his mortgage, can have no bearing upon the question now before the court, for the following reasons,—1. Because they have not been duly certified and filed as exhibits in the case. It is well settled that a document which is stated in the bill, and which the answer admits and refers to, cannot be read from the bill at the hearing, but must be produced. Cox v. *Allingham,* Jacob, 339; 3 Eq. Dig. p. 265, pl. 8. 2. Because the defendants, in this case, were not parties to the proceedings in that case. 2 Sumner's R. 401, 407. 3. Because, the decree in that case does not profess to settle the right of the defendant, Little, to the lots in question.

But, if Little had been a party to Lacy's bill, no decree could have been procured against his title to lots No. 1 and 2. This is the first opportunity he has had to resist Lacy's claim to the lots in question; and he may now do it, 1st. by relying on his own *adverse* possession for more than fifteen years next before the filing of this or Lacy's bill; 2. by insisting upon the lapse of time, as furnishing sufficient evidence of the payment and extinguishment of the debt, described in the condition of Lacy's mortgage deed; 3. by relying upon the lapse of time, and his own open and exclusive possession of both lots, for more than 20 years, as evidence from which the court will presume a conveyance or release from Lacy to him of lots No. 1 and 2;—and finally, by relying upon the statute of limitations. Starkie's Ev. 977; *Chapman* v. *Chapman,* 1 Mumford, 398; *Dorsey* v. *Gassway,* 2 Harris and John. 409; *Chase* v. *Hathaway,* 14 Mass. 222;

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little et al.

Am. Ch. Dig. 103. pl. 2 & 3; *Lansing* v. *Starr*, 2 Johns. Ch. R. 150; *Demarest* v. *Wynkoop*, 3 do. 136; *Moore* v. *Cable*, 1 do. 385; *Giles* v. *Barremore*, 5 do. 445, 452; *Moores* v. *White*, 6 do. 369; *Kane* v. *Bloodgood*, 7 do. 90; *U. V. M.* v. *Reynolds* 3 Vt. R. 542 and cases cited; *Briggs* v. *Prosser*, 14 Wend. 227; *Jackson* v. *Waford*, 7 Wend. 62; 3 Cruise Dig. 318. pl. 21; do. 333, pl. 64; Matthews on Pre. Ev. 196, and cases cited; 1 Sumner's R. 110; *Pratt* v. *Valtia*, U. S. Con. R. January, 1835, 407; *Gates et ux.* v. *Jacob et al.*, 1 B. Munroe's R. 308, 631–2; 2 B. Munroe's R. 282–3–4; 1 Sch. and Lef. 413, 428–9; 2 do. 607.

The statement in Josiah Little's answer, that, in 1829, he and his father considered the lands then quit-claimed to Erastus Chamberlain, incumbered to their value by the Lacy and Lyman mortgages, cannot have the effect to rebut the presumption, arising from the lapse of time, of the payment of the note described in the condition of Lacy's mortgage deed. Nothing short of the admission of the mortgagor himself would remove and overcome that presumption. But again, the statement does not admit the note secured by the mortgage to be due; at most, it was only an admission that the mortgage was undischarged, upon the record and appeared to be an incumbrance upon the land quit-claimed. The statement in question must be taken in connection with the other parts of the answer; and, when so taken, it amounts to nothing like an admission that the Lacy mortgage was an incumbrance on the land claimed by Little. Angell on Lim. 119 to 122.

Thus far, we have proceeded upon the ground that the orators are entitled to no relief whatever against the defendant, Little. But should the court consider the orators entitled to *some* relief, the question will arise, what shall it be?

The special relief asked most certainly cannot be granted, for Little claims only a small part of the lands covered by the Lacy mortgage, viz: one half of No. 2, and one eighth of No. 1. The injustice of compelling him to pay the whole amount of the Lacy mortgage must be apparent. The orators, however, claim, under the general prayer in their bill, *contribution*. They insist that Little should pay such a proportion of the Lacy mortgage as the value of the land he claims, bears to the value of the whole land covered by the

ORANGE,
*March,*
1843.

Admr's of
Lyman,
*v.*
Little *et al.*

mortgage. We contend that no such relief can be granted—1st. Because the frame of the bill will not allow of it. 2d. Because the facts disclosed show that Little ought not in equity to pay any part of the Lacy mortgage. *Gill* v. *Lyon,* 1 Johns. Ch. R. 447; *Clowes* v. *Dickenson,* 5 Johns. Ch. R. 235–40; *Allen* v. *Clark,* 17 Pick. 47, 55.

It is clear that Little cannot be called upon for contribution, unless it appear that the lands covered by the Lacy mortgage, to which Little lays no claim, are insufficient in value to pay the debt secured by the mortgage; and no such thing is alleged or pretended. *Gill* v. *Lyon,* 1 Johns. Ch. R. 447; 5 do. 235–40; 17 Pick. R. 47, 55.

II. As to the right of the orators, under the mortgage from Erastus Chamberlin to Elias Lyman, their intestate. This mortgage we insist is void as to the lots No. 1 and 2, on the ground of an actual *adverse* possession of them by Josiah Little, senior, at the time of its execution and delivery. Statute, 171. The orators, however, contend that the statute upon which we rely does not apply to a mortgage deed or any equitable title. We think it does apply to all titles; but it is unnecessary to discuss that question, because Erastus Chamberlin, the mortgagor, derived his title to the lands mortgaged from Raymond Chamberlin, by deed dated July 5, 1815, and from the heirs of Joseph Chamberlin, by deed, dated February 20, 1816, both of which deeds were void, as to lots No. 1 and 2, upon the ground of an actual adverse possession of them by Josiah Little, senior, at the time they were executed. 8 Pick. 272.

At the time Raymond Chamberlin conveyed to Erastus, in 1815, he had no equitable title to any part of either of the lots in question. He had exchanged his interest in them for an interest in No. 9 and 10. Again, the open, visible and exclusive possession of lots No. 1 and 2, by Josiah Little, senior, from 1815 to 1827, was sufficient to put both Erastus Chamberlin and Elias Lyman on inquiry as to his, Little's, title, and sufficient notice to them that he claimed to own both lots. *Kent* v. *Plummer,* 7 Greenl. 464; *Norcross* v. *Widgery,* 2 Mass. 506; 3 do. Suppt. 596; *Farnsworth* v. *Child,* 4 Mass. 434; *Rublee* v. *Mead,* 2 Vt. R. 544.

III. As to lot No. 10, and three fourths of lot No. 9. It is alleged that Erastus Chamberlin intended to have includ-

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little et al.

ed them in his mortgage deed to Lyman, but that, by mistake, they were omitted. If this were true it would not avail the complainants, because the mistake of one party is no ground for relief in a court of equity. But the pretended mistake is denied by the answers, and no proof has been taken to sustain the allegation. *Wilkinson* v. *Scott,* 17 Mass. 249, and cases cited.

Erastus Chamberlin, having the possession and legal title to lot No. 10, and three fourths of lot No. 9, in 1826, sold and conveyed his interest in them to Josiah Little, senior, and the bill and answers show that Little had a legal title to them at the time of his decease in 1830. It also appears, that, in 1832, the heirs of Josiah Little, senior, conveyed the lots to Anna Atkinson. The complainants therefore, can sustain no claim to either of these lots upon the principle of *substitution,* or any other known to the law. Besides, the bill is not framed for relief, on the principle of *substitution.*

*L. B. Peck,* for orators.

I. As to the orators' rights under the *Lacy* mortgage.

1. The orators stand as the assignees of the Lacy mortgage, and have a right to enforce it against the defendant, Little. The latter cannot rely on the lapse of time as a bar, and insist that it is to be presumed the mortgage debt was extinguished prior to the decree. Although he was not a party to that suit, still, he is bound by the decree, and cannot go back of it, inasmuch as he claims under the mortgagor, and, consequently, is in by privity of estate. *Lady Dartmouth* v. *Roberts,* 16 East, 334 ; 1 Phil. Ev. 246, 284–5 ; Grisley's Ev. 319, 323 ; *Adams* v. *Barney,* 17 Mass. R. 365 ; 1 Stark. Ev. 192–3–4–5 ; 1 Story's Com. ; 1 P. Wms. ; 9 Wheaton, 489.

The foreclosure on the *Lacy* mortgage was a proceeding *in rem, (Kenshaw* v. *Thompson,* 4 Johns. Ch. R. 609) and the general rule is, that, in such case, the decree is binding on the whole world, and it is, at all events, conclusive on all persons claiming under either party.

Suppose the decree had been against *Lacy* on the ground that it was to be presumed the mortgage was extinguished ; this would have been a bar to any other proceeding to enforce the mortgage, either against the Chamberlins or Little,

. Orange,
March,
1843.

Admr's of
Lyman
v.
Little et al.

by Lacy or his assignee. This is the doctrine of the case, *Adams* v. *Barney*. The converse of the principle must also hold, and Little is bound by the decree. Had Lacy, at any time within fifteen years before the commencement of this suit, recovered a judgment at law on the note against the maker, this would have estopped Little from insisting that the note must be presumed to have been paid ; and the decree has the same effect. Again : Both R. and E. Chamberlin, in their answers, admitted the existence of facts which defeated the presumptive bar; and those answers are evidence against Little. The respondents, in their answers to the present suit, admit that, in 1829, both of the Littles regarded and treated the mortgages to Lacy and Lyman as outstanding and unpaid; and they ought not now to be permitted to set up the statute. *Jackson* v. *Price*, 10 Johns. R. 414; *Hansaid* v. *Handy*, 18 Ves. 455 ; *Smart* v. *Hunt*, 4 Ves. 478, (note) ; *Hardy* v. *Reeves*, id. 466.

2. If the orators have not a right to call on the defendant, Little, to pay the whole sum due on the *Lacy* mortgage, they have a clear equity against him for a reasonable contribution. *Taylor et al.* v. *Porter*, 7 Mass. R. 355 ; *Sawyer* v. *Lyon*, 10 Johns. R. 32; *Gibson* v. *Crehore*, 5 Pick. 152 ; *Parkman* v. *Welch*, 19 Pick. 238; 1 Story on Eq. 461–2; 9 Conn.; 9 Wheaton; *Harris* v. *Ingledon*, 1 P. Wms. 98, 99 ; *Sir Wm. Harbart's case*, 3 Co. 14 ; *Taylor* v. *Bassett*, 3 N. H. R. 294.

3. Neither the possession of Edward Little or Josiah Little, senior, was adverse to Lacy. They claimed under the mortgagor, having constructive and actual notice of the existence of the Lacy mortgage, at the time their respective rights accrued. The defendant, Little, then, stands in the shoes of the mortgagor, and can avail himself only of such defence as would, under the same circumstances, afford a protection to the latter. The possession of the mortgagor, and those claiming under him, is never regarded as adverse to the rights of the mortgagee. R. Chamberlin could not insist on an adverse possession had he continued in possession ; and it is equally clear that Little's possession was not adverse. *Higgins* v. *Muir*, 4 Cranch, 419 ; *Hughes* v. *Edwards*, 9 Wheaton, 489 ; *Jackson* v. *Jackson*, 5 Conn. 173 ; *Thayer* v. *Vramt*, 1 McCord's Ch. R. 395–7, (cited 2 Am. Eq. Dig.

327, pl. 20) ; *Fitchburgh Man. Co.* v. *Melom*, 15 Mass. R. 270 ; *Wilder* v. *Houghton*, 1 Pick. 90 ; *Hunt* v. *Hunt*, 14 Pick. 374 ; *Tucker* v. *Keeler*, 4 Vt. R. 161 ; *Reed* v. *Sheple*, 6 Vt. R. 602 ; 4 Kent's Comm. 151 ; *Newman* v. *Chapman*, 2 Rand's R. 93, cited in *Adam's Ejectment*, 31 (n.) ; *Noyes* v. *Sturdevant*, 18 Maine R. 104 ; *Ellithorp* v. *Dewing*, 1 D. Chip. R. 141 ; *Cholmondely* v. *Clinton et al.*, 2 Merivale, 359.

ORANGE,
*March,*
1843.

Admr's of
Lyman
*v*
Little *et al.*

So if a tenant at will execute a lease and give possession. of the premises to his lessee, the owner of the land is not thereby disseized. *Jackson* v. *Rogers*, 1 Johns. Cases, 33. Nor is his conveyance, in fee, a disseizin, unless at the election of his landlord. *Jackson* v. *Davis*, 5 Conn. R. 134. And even the holding over of a tenant for life, after the determination of his estate, though he claims in fee, is not a disseizin of the rightful owner. *Varrick et al.* v. *Jackson*, 2 Wend. R. 166 ; *Lyon* v. *Burtiss*, 20 Johns. R. 491.

II. As to the rights under the *Lyman* mortgage.

1. The payment of interest on the note, within fifteen years, evidenced by the endorsements thereon, the admissions of E. Chamberlin that the debt is due, and the recognition of the existence of the debt by the Littles, when they quit-claimed to E. Chamberlin in 1829, clearly take the case out of the statute of limitations.

2. The possession by the Littles of lots 1 and 2 was not adverse, so as to avoid the mortgage, for three reasons. 1. Both parties claim under R. Chamberlin, and, consequently under the same title. *Jackson* v. *Bard*, 4 Johns. R. 230 ; *Williams* v. *Thomas*, 12 East, 153. 2. The exchange of lands, in 1811, under which Little claims, is *void* by our statute of frauds, and does not lay the foundation for an adverse possession. An act or deed which is void cannot be the foundation of an adverse possession, for it can give no color of title. *Doe* v.*Turner*, 9 Wheat. R. 541 ; *Powell* v. *Harman*, 2 Pet. R. 241 ; *Jackson* v. *Delano*, 13 Johns. R. 552 ; *Holyoke* v. *Haskins*, 5 Pick. 20, 27 ; *Dufour* v. *Camfraw*, 11 Martin's R. 715 ; *Frique* v. *Hopkins*, 4 id. U. S. 224 ; *La Frambais* v. *Jackson*, 8 Cow. 589, 605 ; *Jackson* v. *Vosburgh*, 9 Johns. R. 270 ; Tilling. Adam's on Eject. Appendix, 464-5-6-7-8 ; *Beach* v. *Catlin*, 4 Day's R. 284. Edward Little was a mere tenant at will to R. Chamberlin and those claiming--

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little et al.

under him, and the conveyance to, and entry of J. Little, senior, was not a disseizin of those holding the *legal* title from R. and J. Chamberlin. At the date of the mortgage, this title had vested in E. Chamberlin, who had an undoubted right to execute the deed, as Little must be regarded as his tenant holding at sufferance. *Jackson* v. *Rogers*, 1 Johns. Cases, 33. 3. A mortgage is not a conveyance within the statute against selling pretended titles. *Leonard* v. *Bosworth*, 4 Conn. R. 421; *Green* v. *Scovil*, 4 Day, 234; 4 Kent's Com. 449; *Allen* v. *Smith*, 1 Leigh's Eng. R. 231; *Converse* v. *Searls*, 10 Vt. 578. If a mortgage is not within this statute, the mortgage to the intestate was *valid*, and passed the interest Raymond Chamberlin had in lots 1 and 2. If it be said that the conveyances from Raymond to *Erastus* were void as to these lots, on the ground of an adverse possession, we answer, that the first conveyance was, in effect, a mortgage of his, Raymond's, *equity of redemption*, to secure Erastus for the payment of the Olcutt and Lyman debt, and his subsequent conveyance was a mere release of his right to redeem.

3. The testator was a *bona fide* purchaser, without notice of Little's equitable title. The deed of 1815 from Edward Little to his father, J. Little, senior, does not cover lot No. 2, nor that part of No. 1 conveyed by the mortgage. The deed of 1817, between the same parties, was not recorded till 1821, and even notice of this deed would not afford notice of the grantee's claim, as it contained no particular description of any land. Nor did the possession of Little affect the testator, as it does not appear that the testator had any knowledge of it. Had knowledge of this fact been brought home to him, he would have been bound by any equitable title existing in the former.

4. If lots, Nos. 1 and 2 are not bound by the mortgage, then we insist that the plaintiffs have an equitable lien on 9 and 10, on the ground of substitution. These lots were received in exchange for, and stand in the place of, 1 and 2. These lots would be bound by this equity in the hands of E. Chamberlin; and Little, senior, claiming under and through the exchange, having full knowledge of all the circumstances, is also bound by the equity, which is to be regarded as running with the land. The lots are equally affected by the

lien in the hands of Atkinson, as he holds in the right of his wife, who claims as heir to J. Little, senior. *Hamilton* v. *Royce*, 2 Scho. & Lef. 315; *Harvey* v. *Ashley*, cited in 2 Scho. & Lef. 328; 2 Sugden's Vendors, 341; in the matter of *Howe* and *Wife*, 1 Paige, 125; *White* v. *Knapp et al.* 8 Paige, 173.

ORANGE,
*March,*
1843.

Admr's of
Lyman
*v.*
Little *et al.*

The opinion of the court was delivered by

WILLIAMS, Ch. J. — The object of this bill is to foreclose a mortgage, executed by Erastus Chamberlin to the orators and, also, to compel the defendants to pay the sum due on a mortgage executed by Raymond Chamberlin to Ephraim Lacy, which the orators have been compelled to pay. Or if the mortgage, executed by Erastus Chamberlin, does not include certain lots, No. 1 and 2, — that the mortgage may be considered and decreed as a lien on Nos. 9 and 10, which were received by Little in exchange for Nos. 1 & 2, because Nos. 1 and 2 were inserted, by mistake, instead of Nos. 9 and 10.

It appears that, in September, 1806, Raymond Chamberlin executed a mortgage deed to Ephraim Lacy, of a part of lots No. 1, 2 and 9, with other lands; that, in 1811, Raymond Chamberlin exchanged with Edward Little, and put him into possession of Nos. 1 and 2, and received in exchange therefor, that part of No. 9 of which he was not then the owner, and, also, No. 10. In 1815, Raymond deeded to Erastus, and in 1818, Erastus mortgaged to the orators.

If the orators are entitled to foreclose this mortgage against the defendant, Little, it must be on the ground that Little is assignee of the mortgagor, Erastus Chamberlin; for if Little holds by an elder, or independent, or adverse title, the orator cannot make him a party to a bill of foreclosure, as he could be under no legal or equitable obligation to pay that mortgage. The defendant, Little, is not assignee of the mortgagor, Erastus Chamberlin, in consequence of any deeds executed by Erastus to Little. The only deed from Erastus, in evidence, is the one executed by him to Little in 1826, and, as all the land described in Erastus' mortgage to the orator, which was included in the deed of Erastus to Little, in 1826, was reconveyed by Little to Erastus in 1829, the

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little et al.

defendant, Little, cannot be said to hold under the mortgagor, Erastus, in consequence of any deed of conveyance.

The title of the defendant, Little, is wholly adverse to that of the orators under the mortgage from Erastus. In 1811, Edward Little made the exchange with Raymond Chamberlin, by virtue of which, Little went into possession, claiming these lots as his own. In May, 1815, E. Little conveyed to Josiah Little; and though it may be doubtful whether the deed, then executed by Edward Little, contained and conveyed the lands in question, yet we learn, from the testimony, that it was intended to convey these lots, and that Josiah Little immediately went into possession, claiming them as his own. Little being thus in possession, the deeds from Raymond and the heirs of Joseph Chamberlin, to Erastus, executed in July 1815, and in 1816, were inoperative and void by force of the statute of 1807, against purchasing lands of which another is in adverse possession; and this effect is not obviated by the claim set up in the bill, that the deed from Raymond to Erastus was intended as a mortgage. The deed is absolute in its terms, and there is no proof that it was otherwise intended. Nor is this effect obviated by the fact that the exchange, made in 1811, was by parol. As possession immediately accompanied the exchange, and the parties entered into possession, claiming ownership, their respective possessions, for fifteen years, would have ripened into a perfect title.

The possession of Little being, then, adverse, no part of these lots, Nos. 1 and 2 passed to Erastus, or could pass by his mortgage deed to the orators. The orators are, therefore, not entitled, on the ground of the mortgage to Lyman, to any decree against the defendant, Little, for Nos. 1 and 2. The fourth part of No. 9 was released to them by Erastus, in 1836, and is not now in controversy.

The next question is, whether the mortgage of the orator should be corrected, so as to embrace Nos. 9 and 10, which were received, instead of Nos. 1 and 2.

The answer to this is, there is no evidence, whatever, of any such mistake; and equity will not correct a mistake in a written instrument, except on clear and undoubted testimony. On no ground, whatever, can the orators have any claim against the defendants, Little or Atkinson, on the

ORANGE,
March,
1843.

Admr's of
Lyman
v.
Little et al.

mortgage executed to their intestate by Erastus Chamberlin.

On the mortgage executed by Raymond Chamberlin to Lacy, called the Lacy mortgage, the equitable claim of the orators stands on different grounds. This mortgage was an incumbrance on Nos. 1 and 2, owned by Little, as well as on the other lands contained and described in the deed of mortgage from Erastus Chamberlin to the orators ; and if either were compelled to pay the same, they could call on the other for remuneration of an equitable portion of the money thus paid for their common benefit. The orators have been compelled to pay the whole amount of the mortgage incumbrance, and thereby have relieved the lands of the defendant from the incumbrance created by that mortgage, and what existed at the time of the parol exchange made between Edward Little and Raymond Chamberlin. According to the principle on which the court made the decree in the case of *Payne* v. *Hathaway*, 3 Vt. 212, the defendant should pay his proportion, unless he has shown a good reason for not doing so, by his answer, and the testimony. The statute against purchasing lands when there is an adverse possession does not apply. But the defendants insist upon the statute of limitations, and upon the presumption arising from his possession for fifteen years. Both of these defences are removed by the admission made by him, in his answer, that, in August, 1829, this mortgage was then an outstanding and existing incumbrance, which is equivalent to an admission that it was not paid, and, also, by the decree of foreclosure obtained by Lacy at the March term of this court, 1835, against Raymond Chamberlin, as well as against the orators. The debt to Lacy being thus unpaid, as appears by the admissions of Raymond Chamberlin, as proved by the decree, as well as by the admission of the defendant in August, 1829, neither the statute of limitations, nor the presumption arising from possession, could have prevented Lacy from obtaining the decree against the defendants, if they had been made parties to that bill, nor do they stand in the way of the orators' claim in this bill.

It is objected that the decree made in the suit of Lacy against the orators, is not evidence, in this case, inasmuch as it has not been filed as an exhibit. It being stated in the

ORANGE,
*March,*
1843.

Admr's of
Lyman
*v.*
Little *et al.*

present bill, and admitted in the answer, without any reference to the decree or proceedings, it is to be considered as proved and in evidence, so far as it is stated and admitted. Had it been only admitted in the answer *and referred to,* as was the written document in the case of *Cox* v. *Allingham,* 1 Jacob, 339, the orators should have filed the record as an exhibit.

It is, however, urged that the orators cannot be treated as assignees of the Lacy mortgage, inasmuch as their mortgage did not contain Nos. 1 and 2, in consequence of the adverse possession of the defendant. The orators are not considered as the assignees of the mortgage as to those lots, for if they were such, they would be entitled to a foreclosure against the defendant for the whole sum of the Lacy mortgage. But it is on the ground that they have no claim to those lots, but have been compelled, in order to relieve their other lands from that incumbrance, to pay that mortgage, and thereby relieve the defendant from that incumbrance. We are, therefore, of opinion, that, for the proportion of the money paid by the orators on the decree obtained by Lacy, in March 1835, the orators have a decree against the defendant ; and this proportion was correctly ascertained and settled by the chancellor, and that the orators are entitled to relief under this bill, wherein they pray for a foreclosure of the Lacy mortgage, and also for such other relief as the facts or proof would warrant. The cost on the Lacy mortgage should be borne proportionably by the orators and defendant, as it was money which the orators were compelled to pay on an incumbrance on the lands therein described ; and the orators were in no fault, because Lacy did. not make the defendants parties to his bill. The security of Lacy being sufficient, without resorting to the defendants, he probably did not wish to involve himself in the controversy which has embarrassed these contending parties.

Upon the subject of dismissing Atkinson, with costs, we would observe that costs are so much within the discretion of the chancellor, that this court will rarely, if ever, alter or disturb a decree made by him, as to costs. We, however, see no reason why this discretion was not properly exercised in this case.

The decree of the chancellor is, therefore, affirmed, except

that, as the time for the payment has elapsed it will be necessary to extend it to the 1st of August next; and the chancellor will be directed to alter the decree accordingly.