WILLIAM PHILPOTT
vs.
IRWIN ELLIOTT.

DECEMBER TERM, 1851.

[SPECIFIC PERFORMANCE—POWER TO CORRECT ERROR IN WRITTEN AGREEMENTS.]

It is competent for a party in a court of equity to offer parol evidence of a mistake in a written agreement relating to lands, have it rectified and then specifically executed as rectified.

But before the agreement will be reformed and executed as reformed, the mistake, and the proposed correction, must both be made out in the clearest and most unequivocal manner.

Specific execution of contracts in equity is not a matter of absolute right but of sound discretion in the court, and unless the court is satisfied, the application is fair, just, and reasonable in every respect, it will abstain from interfering.

[The bill in this case was filed on the 23d of June, 1850, in the equity side of Baltimore County Court, from which it was removed to the Court of Chancery. The facts of the case are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR:

Whatever doubts may have been entertained as to the state of the law prior to the case of *Moale* vs. *Buchanan et al*, 11 *G. & J.*, 314, there certainly can be no doubt now that it is competent to a party in a court of equity to offer parol evidence of a mistake in an agreement in writing relating to lands, to have it rectified, and then specifically executed as rectified.

Cases establishing a contrary doctrine may readily be found, but these were repudiated by Chancellor Kent, who permitted the parol proof to be offered establishing the mistake, reformed the agreement according to the proof and specifically executed it as reformed, and the principle thus settled, was approved and affirmed by the Court of Appeals in the case referred to.

The bill in this case asks for the application of this principle. It alleges, that on the 19th of September, 1849, a lease was executed by the defendant to the plaintiff, of a lot of ground in the city of Baltimore, upon the terms therein mentioned, in

which an error very prejudicial to the interests of the complainant was committed, and the object of the bill is to have this error rectified, and a new lease executed conforming to the real intention of the parties.

The imputed error consists in the second line of the lot, as described in the lease, according to which it is made to run from the termination of the first line on Baltimore street, "northerly seventy-five feet, running at right angles with Baltimore street," when, according to the statement of the bill and the pretension of the complainant it should have run "northerly in the direction of the most northerly angle of the entire of said lot, seventy-five feet."

A glance at the plat among the proceedings, will show how very material this supposed mistake is, for if the line in the lease is the true one, and the parties are to hold according to that line as laid down, the complainant will not only lose a considerable portion of the area of the lot claimed by him, but he will also be deprived of a part of the ground upon which his house stands, and on the other hand, if the line insisted upon by the complainant is the true one, the defendant will lose a portion of his houses back and front.

The defendant, though he maintains in his answer, that the portion of the lot which he agreed to lease to the complainant is accurately and correctly described in the lease, does not contend for the location thereof as made by the surveyor, but insists upon a line which shall conform with the improvements made by the parties upon their respective lots, and which is indicated by a fence as located upon the plat, and contends that such is the true and legal location of the lease according to the adjudged cases.

As there is no absolute necessity for it, I do not propose to decide this question, which belongs more properly to a court of law, and could only be authoritatively decided there in an action of trespass or ejectment. I deem it sufficient here to say, that a reasonable doubt may be entertained in regard to the true construction of the lease, and that it is not certainly so free from ambiguity as to render the interposition of this court

wholly unnecessary in the form in which its aid is invoked, and that if a proper ground is laid, it is its duty to interfere to prevent future litigation.

But, though this court has unquestionably the power to grant the relief prayed by the bill, provided a clear case of mistake is made out, it is indispensably necessary the alleged error be demonstrated in the clearest and most unequivocal manner, for if there be a reasonable doubt upon the subject, the court must withhold its aid.

The necessity of furnishing proofs to the entire satisfaction of the court before it will act in cases of this description, is shown by the case of *Hall & Gill* vs. *Clagett, 2 Md. Ch. Decisions,* 153, and the authorities there referred to. And it is not only necessary that strong evidence be produced that a mistake was committed, and that the agreement signed by the parties, does not conform to their intentions, but the stipulation proposed to be introduced, or the correction proposed to be made must be established by equally conclusive proof. Before the agreement will be reformed, and executed as reformed, the court must be perfectly satisfied what the real intention of the parties was, or otherwise it will not interfere.

Upon looking at the plat, in this case, there is great difficulty in believing that the defendant, with a full knowledge of the consequences to himself, could have agreed to the line claimed by the bill, and there is evidence that he, upon some occasions, protested in the strongest terms against that line. There is, however, evidence the other way, and in my opinion, as between the lines described in the lease and the line claimed by the claimant as the true line, the preponderance of the proof is in favor of the latter, as there cannot be the slightest doubt of the perfect and entire respectability and credibility of the witnesses who have testified upon the subject.

But still looking to the whole evidence, and seeing how seriously the rights of the defendant would be prejudiced by establishing that as the true line, I cannot bring myself to think, that the defendant, with a full understanding of its effect, gave his consent to it.

Supposing, however, that the agreement, founded upon the extreme improbability of the thing, was less strong than it certainly is, there are reasons of great weight why the court should not rectify the contract as claimed in' this respect, and decree its specific execution as corrected. The evidence shows, that the defendant is a carpenter, and that he has erected a house on the lot claimed by him, and that he has also built a house on the complainant's lot, and further, that the complainant was frequently at the house when it was in a course of construction, that he knew the dividing line between his lot and that of the defendant was run so as to conform to the improvements on both lots, and that he expressed no dissatisfaction. And it is admitted in the record, the complainant has been in possession of his house since September, 1849, and is still in possession.

And the proof further shows, that the parties run a dividing line between them, and put up a fence upon that line, which fence is laid down upon the plats, and steers entirely clear of the improvements on both lots. That such a line was run and fence erected, there can be no doubt, and that the buildings and improvements of the parties have been in conformity with it. And it is apparent, that if the complainant is successful in his present application, to the full extent of his claim as asserted by the bill, he will not only get rid of this line, but will take from the defendant a part of the ground upon which his house stands, which he stood by and saw him erect, as some of the witnesses say, without objection or complaint. This circumstance, as it seems to me, is fatal to the prayer of this bill to the full extent to which it goes, it being established upon authority, that the specific execution of contracts in equity is not a matter of absolute right, but of sound discretion in the court, and that unless the court is satisfied that the appeal to it for this extraordinary assistance is fair, just and reasonable in every respect, it will abstain from interfering. This was the principle maintained by this court in the case of *Waters* vs. *Howard*, 1 *Md. Ch. Decisions*, 112, which upon appeal to the Court of Appeals was affirmed.

Now, it appears to me, that, in view of the fact that a line has been run as has been mentioned, and that the complainant did not interfere, in due season, to prevent the defendant from erecting improvements upon his lot, but stood by and saw such improvements erected without objection, it would be any thing but fair, just and reasonable, now to establish by the power of this court, such a line between him and the defendant as would take from the latter any part of his improvements. It appears to me, that justice between the parties will be more certainly accomplished by taking the building line, and continuing that line as indicated by the fence to the end thereof, thence easterly parallel with Baltimore street to Cove or Fremont street, thence southerly with Cove or Fremont street to the place of beginning at A. on Baltimore street. The parties themselves seem to have fixed upon this line, and there is nothing in the bond of conveyance executed and delivered by the defendant to the plaintiff, and which has been produced by the latter in obedience to the order of Baltimore County Court, passed upon the petition of the defendant, which in the slightest degree militates against it, because the distance between the end of the second line and Cove street is left blank, showing that the parties did not at the date of its execution, (which was the 4th of June, 1849,) know precisely how the line would run. The contract in that respect was incomplete, and the parol evidence in relation to the buildings, and the fence supplies the defect, and shows, I think, very satisfactorily how it was understood the line should be run.

Upon the whole, my opinion is, that a new lease should be executed, establishing a line of the buildings and the fence as the dividing line between these parties, and I shall pass a decree accordingly.

The counsel on either side may prepare a decree in conformity with this opinion, appointing a trustee, or directing the defendant to execute the lease, and directing the parties, respectively, to pay their own costs.

McLAUGHLIN and BUCHANAN, for Complainant.
WHELAN, for Defendant.
23*