ORANGE,    BENJAMIN GRISWOLD  v.  JOHN SMITH, RUFUS C. SMITH and
*February*,                        SARAH GLYSSON.
  1838.

*(In Chancery.)*

Courts of chancery will not interfere to correct alleged mistakes in con-
tracts and deeds, unless those mistakes are admitted by defendant's an-
swer, or very conclusively proved.

One, who takes a conveyance of land from one long out of possession,
while another has been in the open, visible possession, having an unre-
corded deed of the same, will be affected with notice of such deed.

THE orator, in his bill, alleged, that William Carley, on the
21st March, 1808, conveyed, by deed of that date, to the
defendant, John Smith, a certain piece of land in Brookfield,
part of lot No. 2, in the tenth range, containing about fifteen
acres, and that, on the 1st January, 1814, the said Carley,
by deed of that date, conveyed to said Smith another piece
of land, part of the same lot No. 2 ; that said Smith inclu-
ded the two pieces in the same inclosure, and continued there-
after to occupy them as one lot, denominated his *Branch
lot,* or *Branch farm,* up to the date of his mortgage deed to
the orator, hereafter mentioned.

The orator further alleged, that on the 6th May, 1825,
the legal guardians of Patty Pride and William Pride, the
minor children of William Pride, deceased; under a licence
for that purpose, conveyed to said John Smith, by their deed
of that date, a certain other piece of land in said Brookfield,
containing about two acres, part of lot No. 7, in the 6th range,
and that said Smith mortgaged the same land to said guar-
dians, to secure the payment of $218 ;

That on the 14th Dec. 1830, Smith was indebted to the
orator in the sum of $500, and proposed, in order to secure
the payment of such sum, to mortgage to the orator the whole
of the land called the " Branch lot," and also the land con-
veyed to said Smith by said guardians, and did execute a
mortgage deed of that date to the orator, which the orator
then believed to convey the whole of the two lots deeded to
Smith by Carley, called the " Branch lot," together with the
land deeded by said guardians, which was called the " home
lot."

The orator further stated, that Smith neglected to pay the
money due on his said mortgage to said guardians, and that

the orator, to save his lien on that portion of the mortgaged premises, paid the amount so due to the said guardians;—

That said John Smith, on the 12th Feb. 1834, made his quit-claim deed of said "home lot," and also of the "Branch lot," to the defendant, Sarah Glysson, "the said Sarah well knowing said premises to be mortgaged to the orator, as aforesaid ;"—

That the said Smith having neglected to pay the sums due on his mortgage to the orator, the orator commenced an action of ejectment, at the June term, 1834, of Orange county court, to recover the possession of the premises described in said mortgage, at which term the said Smith made default, and, on his motion, time was given him to redeem said premises ; but that said time expired, without any payment by him to the orator, whereupon the orator took out his writ of possession, and was duly put into possession of said premises ;—

That on the 12th May, 1835, Rufus C. Smith, one of the defendants, obtained a quit-claim deed of that date from the said William Pride and Leander Hutchins, the husband of said Patty Pride,—the said William and Patty being then of full age,—of the said "home lot," and that the said Rufus C. Smith, on the 3d June, 1835, conveyed the same premises, by quit-claim deed, to the said Sarah Glysson.

The orator further stated, that said Sarah Glysson afterwards brought her action of ejectment against him, at the Dec. term, 1835, to recover possession of said "home lot," and her other action of ejectment, to recover that portion of the "Branch lot," which was conveyed by said Carley to said John Smith, by deed dated 1st January, 1814 ;—

That in preparing to defend against said actions of ejectment, the orator then first discovered that the said "Branch lot," had been conveyed by said Carley to said John Smith, by two distinct deeds of different dates, as before stated, whereas said Smith's mortgage deed to the orator described the premises thereby conveyed, as having been deeded to said Smith by deed from said Carley, dated 21 march, 1808, without mentioning said Carley's other deed to said Smith, dated 1st January, 1814 ;—

And that the orator then first further discovered, that the deed from said guardians to said John Smith, of the "home lot" had never been recorded ;—that the orator was under the

Orange,<br>
February,<br>
1838.<br>
<br>
Griswold<br>
v.<br>
Smith et al.

necessity of compelling the said John Smith, by legal process, to procure said last mentioned deed to be recorded, upon which the orator further discovered, that said deed was dated the 6th May, 1825, and not the 6th May, 1828, as it was described to be n the said Smith's mortgage deed to the orator.

The bill sought a discovery and contained an appropriate prayer for relief in the premises.

The answer of John Smith stated, that, at the time the said Smith proposed to mortgage to the orator, he presented the orator with the deed to him from said Carley, dated in 1808, and the deed from the said guardians, dated in 1825, as describing the premises he proposed to mortgage ; that he did not intend to mortgage any other land, and never promised nor gave the orator to understand that he would mortgage any other ; that the date of the deed from the said guardians to said Smith was, by mistake, misdescribed by said Smith, in the mortgage to the orator ; that the deed from said guardians was omitted to be recorded, through the innocent neglect of said Smith, and that, at the time the orator first applied to the said Smith, requesting him to procure said deed to be recorded, said deed was lost, and could not be found, and was not found till some time afterwards. Said answer denied all combination, &c.

The answer of Rufus C. Smith denied all knowledge of the deed from the said guardians, at the time of his taking the deed from William Pride and Leander Hutchins, and that he knew of the terms of John Smith's deed of mortgage to the orator, only from the records of the town of Brookfield.

The answer of Sarah Glysson stated, that at the time of receiving the quit-claim deed from John Smith, she was informed, and believed, that only a part of the "home lot" had been mortgaged to the orator, but what part was included in said mortgage, she did not know ;—and denied all knowledge, at the date of Rufus C. Smith's deed to her, of the deed from the said guardians to said John Smith.

The extent and sufficiency of the testimony in the case may be understood from the opinion of the court, delivered by

REDFIELD, Chan.—In this case, the defendant, John Smith, having conveyed the first piece in dispute to Sarah Glysson, and the second piece being conveyed by Pride and Hutchins

to Rufus C. Smith, and by the latter to Sarah Glysson, the orator seeks a release of her title.

In relation to the first piece, which the orator claims John Smith intended to have included in the mortgage, and which the orator supposed was included, it is to be observed,—

That the defendant, John Smith, wholly denies any such intention. It, therefore, devolves upon the orator to prove that such was the contract. This must be done by the most conclusive evidence. This court, when called upon to correct mistakes of this character, always require the most irrefragable evidence. The mistake must either be admitted and confessed by the defendant, or proved by such evidence as admits of no doubt, or this court will not interfere to change the tenor of the written contract of the parties. When called upon to correct mistakes of the parties, if we find ourselves in doubt, whether, by interfering, we may not produce wrong, rather than correct it, we should commend the parties to their contract, as it exists in the written evidence.

In this case, although there be some proof tending pretty strongly to show, that the contract of the parties did include, or was intended to include, the small Carley piece, yet, it falls very far short of that conclusive proof, which will warrant the court in setting aside the contract of the parties, as reduced to writing and signed, and this against the explicit answer of the defendant upon oath.

In regard to the "home lot," included in the deed from the guardians of Wm. and Patty Pride to John Smith, and also in the mortgage, it is clear the defendant, Sarah Glysson, cannot hold it. For, although the evidence is not altogether sufficient to show, that she had knowledge of this mortgage, at the time she received her title, it does seem probable, from all the circumstances in the case, that such must have been the fact.

At any rate, the orator's title must be preferred to the defendant's, on another ground. John Smith obtained the first conveyance from Pride, and continued in possession of the land, under that title, for many years before the conveyance to the orator, and up to the time of the foreclosure of his title. The orator's title and that of John Smith are identical and constitute but one title, and that of Sarah Glysson is to be considered as a distinct and adverse claim of title.

Griswold
*v.*
Smith *et al.*

Under these circumstances, Sarah Glysson would be affected with constructive notice of John Smith's unrecorded deed from Pride. Pride having for many years ceased to exercise any claim of title to the land, and John Smith and the orator having all along had the visible and apparent ownership, was notice to all the world of Pride having conveyed to Smith. *Rublee* v. *Mead*, 2 Vt. R. 544.

This court decree ;—

That the said Sarah Glysson be perpetually enjoined from bringing or prosecuting any suit, for the recovery of the land described in Pride's deed to John Smith, and that she release all her interest in the same to the orator within sixty days hereafter, and that she pay no costs, and recover none ; and that the orator recover his costs against the other two defendants.

In the case of Sarah Glysson, costs are denied on the ground that she has prevailed on one point, and, especially, on the ground that she is not affected with any evidence of *fraud in fact.*

*Wm. Nutting,* for orator.

*Wm. Upham,* for defendants.