Hunt *vs.* Stuart.

(Decided 11th March, 1880.)

---

ALBERT L. HUNT *vs.* JOHN J. STUART.

*Practice in Equity—Mistake—Laches—Alleged Over-payment to an Outgoing Partner.*

In all cases of mistake Courts of equity require the injured party to take steps to obtain relief promptly, and if he has been guilty of *laches*, they will not listen to his complaint.

The mistake must be made out by clear and satisfactory proof. If an amount is claimed to have been overpaid the outgoing partner in a settlement on a dissolution of a partnership. as in this case, the amount must be certain, and the error made under circumstances and be of such a character, as to make it just and equitable that it should be rectified.

15                    v. 53.

---

Hunt *vs.* Stuart.

---

If a settlement had between partners on a dissolution of a partner-
ship, several years before, is to be opened for the purpose of correct-
ing an alleged error in the settlement, whereby, it is claimed,
the outgoing partner was overpaid, then justice would require
that in this case, it should be opened for all purposes and an
accounting between the parties for all the business and affairs of
the partnership be had.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MIL-
LER, ALVEY and IRVING, J.

*Randolph Barton,* for the appellant.

" Money paid voluntarily, under mistake of fact, is re-
coverable, both at law and in equity, unless it be clear
that the party making the payment intended to waive all
inquiry into the facts. It is not enough that he may have
had the means of learning the truth if he had chosen to
make inquiry. The only limitation is that he must waive
all inquiry." *Kerr on Fraud and Mistake,* 415, citing:
*Merchants' National Bank vs. National Eagle Bank,* 101
*Mass.,* 285; *Appleton Bank vs. McGilway,* 4 *Gray,* 520;
*Kelly vs. Solari,* 9 *Meeson & Welsby's Reports,* 57, PARKE,
B.; *Balto. & S. R. R. Co. vs. Faunce, &c.,* 6 *Gill,* 76;
*Williams vs. Savage Manufacturing Co.,* 1 *Md. Ch. Dec.,*
306, 322 *and* 323.

*L. W. Gunther, Jr.,* and *A. C. Trippe,* for the appellee.
The complainant has been guilty of such *laches* as to
deprive him of the remedy sought. *Clabaugh vs. Byerly,*
7 *Gill,* 354; *Beard vs. Hubble, et al.,* 9 *Gill,* 430; *Nelson
vs. Hagerstown Bank,* 27 *Md.,* 51; *Hall, Adm'r, &c. vs.
Clagett, &c.,* 48 *Md.,* 223.

This is not such a case of mistake as entitles complainant to relief. Mistakes as to facts will not entitle a party to relief if the mistake arose from negligence or want of due diligence such as may be fairly expected from a reasonable person. *Kearney vs. Sasscer*, 37 *Md.*, 276; *Wood vs. Patterson*, 4 *Md. Ch. Dec.*, 335; 1 *Story's Eq. Jur.*, secs. 148, 149, 150.

The complainant has full and adequate remedy at law. The cause of action is a definite sum claimed to be due in a specific way. The settlement was intended to be final. *Dorsey vs. Dashield*, 1 *Md.*, 203.

MILLER, J., delivered the opinion of the Court.

The controversy in this cause which at first assumed a broader scope has been narrowed down to the question whether the appellant is entitled to recover from the appellee the sum of $852.16, which he alleges was paid under a mistake.

It appears these parties had for some years been partners in the wooden-ware business. Early in 1872 a dissolution of the partnership was contemplated and steps to that end were taken which culminated in an agreement signed by both parties and dated the 17th of February, 1872. By this it was agreed that Hunt should be the purchaser and Stuart the seller; the stock of goods was to be taken and also the debts due the firm; the liabilities and bad debts were to be deducted and the individual accounts of the partners were to be settled; the partner buying was to pay the outgoing partner what was due him, and the outgoing partner retained a half interest in the bad debts; Hunt, the buying partner, was to have *ten per cent.* on the debts due to the firm to defray the costs and risks incident to their collection, which was to be taken into the calculation in ascertaining the condition of the individual accounts. Two accountants, one selected by each party, were then called in, who examined the books of the firm,

and the individual accounts of the partners, and ascertained there was due from Hunt to Stuart, according to the terms of this agreement, the sum of $2585.27. This sum was duly paid to Stuart by Hunt, on the 27th of February, 1872. On the preceding day notice of the dissolution was published and Stuart executed an assignment to Hunt of all his interest in the assets and property of the firm, of every kind and description including book-debts, *choses in action*, and accounts. This assignment also states that it is distinctly understood as part of the consideration therefor, that Hunt shall pay all debts of the firm promptly at maturity. These facts show a final settlement between the parties and we do not understand that this is now disputed. But Hunt insists the accountants made a mistake in the ascertainment of the amount due, in consequence of which he has made an over-payment of $852.16, and he now asks a Court of equity to compel Stuart to pay back this sum with interest. We are all clearly of opinion he is not entitled to relief.

*First.* There has been great delay in asserting the claim. In all cases of mistake Courts of equity require the injured party to take steps to obtain relief *promptly*, and, if he has been guilty of *laches* they will not listen to his complaint. *Beard vs. Hubble*, 9 *Gill*, 420. The complainant knew of the alleged mistake shortly after the money was paid, for as early as the 11th of March, 1872, Barker, his accountant when the settlement took place, at his request addressed a letter to Stuart, in which he says Hunt had called his attention to an error made in the settlement by which he (Stuart) had been overpaid $977.70, and he then states how the mistake occurred. Hunt testifies that the day after this letter was written, Stuart called on him in response thereto, and promised that if there was any error he would correct it, but Stuart in his testimony denies that he ever made any such promise. After this nothing whatever was done until Hunt filed the

bill in this case on the 16th of February, 1875. In that bill he does not rely upon this mistake, and makes no mention of it. He simply charges that Stuart had failed to settle the partnership matters in accordance with the terms of the agreement of the 17th of February, 1872, and prays that the partnership may be *dissolved;* that an account of its business may be taken under the direction of the Court, that its effects may be applied to the payment of its debts and liabilities, and the residue distributed to the proper parties. The answer which was promptly filed relies upon the settlement of February, 1872, as final, and avers that the partnership was then dissolved, and its affairs closed and adjusted. The testimony of Hunt and Barker was then taken under a commission, and it was not until the 15th of October, 1876, that a special replication to the answer was filed in which the complainant, for the *first time,* charges that there was an error in the accounts on which the settlement was made, whereby he had made an over-payment of $977.70. It therefore appears that more than *four years and seven months* had elapsed, after the settlement was made, and after he had knowledge of the supposed mistake, before he set it up as a ground of relief in a Court of equity. This delay is wholly unexplained, and in our opinion it amounts to *laches* sufficient to bar relief.

*Secondly.* The mistake must be made out by clear and satisfactory proof. The amount must be certain, and the error made under such circumstances and be of such a character, as to make it just and equitable that it should be rectified. The proof in these respects is far from satisfactory. While it may be true that from such books of the firm as are now before us, and with such means as we now have, an account under the agreement of February, 1872, could not be stated to correspond with the result reached by the examiners at that time, still the error is not so apparent that we can safely say it amounts to the

precise sum of $852.16.   The amount stated in the special replication is $977.70, but this is now conceded to be too much, and the proof in this record shows at least several items amounting to more than $100 which ought clearly to be deducted from the $852.16.   But apart from this, Stuart testifies that he was not satisfied with the estimates and statements then made, that he did not think they were correct, or that they did justice to him, and that he objected to them on that account, but it was ultimately agreed and understood that all *errors* and *mistakes* should be *waived* and *concluded* by the final settlement, and that all objections and exceptions to the accounts should be thereby finally compromised and settled.   If such was the fact, and the settlement was effected and the money paid with the understanding between the parties at the time that all errors and mistakes should be waived, then clearly there is an end to the case.   It is evident the amount Hunt paid was less than he expected, for in his letter of the 7th of February, 1872, to a party with whom he then contemplated forming, and afterwards did form a new partnership in the same business by putting in the stock in this, he says he thinks that $5000 cash will get the "interest" of Stuart; and in the same letter after stating the offer of Stuart to sell on the terms subsequently embodied in the agreement of the 17th of February, he writes, "this is a good thing for the party buying and a poor thing for the one selling."   It is true that the testimony of Hunt, as to waiver of errors when the settlement was made, is very different from that of Stuart, and we have a direct conflict between the only two witnesses who had knowledge of such an understanding, and who testify as to this important point.   But conflicting testimony which leaves a question of this kind in doubt is not sufficient.   The settlement cannot be overthrown, or a mistake in it established in the face of such a direct conflict of testimony upon the question whether all errors, supposing any to exist, had not at the time, been waived by the parties themselves.

Hunt *vs.* Stuart.

*Thirdly.* Again if the settlement is to be opened for the purpose of correcting this alleged error, then justice requires that in this case it should be opened for all purposes, and an accounting between the parties for all the business and affairs of the partnership be had. The bill as well as the replication prays for an account, and under a decree to account each party becomes an actor, and either may recover against the other according to the result of the accounting. But it is evident the accounts could not now be stated so as to do justice to Stuart. The books of the firm since its dissolution in 1872 have been in the possession or under the control of Hunt. Many of them absolutely essential to a clear ascertainment of the affairs of the firm have been lost or destroyed. The sales book, the day book, the cash book, and the check and note books are missing, and only the journal and ledger preserved. In this state of case no reliable and satisfactory result could be reached under a decree to account.

These considerations, without adverting to others, are quite sufficient to sustain the decree of the Circuit Court, which denies relief and dismisses the bill.

*Decree affirmed.*

(Decided 11th March, 1880.)