MUTUAL LIFE INSURANCE COMPANY *v.*
AUGUSTA METZGER.
[No. 4, April Term, 1934.]

*Decided May 4th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Arthur L. Jackson,* for the appellant.

*Charles Allan Lynch* and *John D. Alexander,* with whom were *Wm. Pepper Constable* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The suit is one for reformation of a policy of life insurance, on the ground that by a clerk's mistake it was made out for an amount greater than that applied for and agreed upon, and the complainant appeals from a decree denying the relief.

The policy was issued upon an application signed by the insured, Mrs. Julia A. Lomax, and her daughter, Augusta Metzger, the appellee, was named as beneficiary. After the death of Mrs. Lomax, the beneficiary, according to her testimony, found the policy made out for $500. She knew nothing of the taking out of the policy, assumed that it was correctly made out as it appeared, and, rely-

ing on the availability of so much money, incurred and paid a bill of $400 for funeral expenses. The insurer, however, contends that a policy of only $50 was applied for, that the premium specified in the application, and subsequently paid, was the premium for a $50 policy, but that a clerk in writing the policy from the specifications in the application of the deceased mistook the $50 for $500. From a photostat copy of the application inserted in the record on appeal, it appears that in a block lined off for the amount of the insurance 50 appears in comparatively large figures, and a smaller, fainter *o* appears on a somewhat higher level in the same block at the edge, after the 50, while another small *o* appears on the same higher level farther to the right, outside the block. In this copy the smaller *o's* are somewhat obscure, but in the taking of testimony the court below, with the original in hand, seems to have found the facts as here stated. Questioning the clerk who made the error, it is recited: "The court called her attention to the fact that there were two inserted there and very little, to which the witness replied, 'Yes, but the other isn't in this block, it is over further.'" And the court continued "There are two naughts there over which * * * there are two besides, and you interpreted one as being in the column of figures and failed to see the right-hand one that was outside of the column, and you interpreted it as $500, when if you could have seen both you would have seen the $50, if it had been more prudently put. * * * In other words you made a mistake?" "Yes, sir." It was testified for the company that the premium specified and paid was, as stated, the regular premium for a $50 policy. The deceased had two other policies in the same company, one for $120 and one for $55, and there is no dispute on these.

The controlling principles are plain. "If parties enter into an agreement, and through an error in the reduction of it to writing, the written agreement fails to express their real intentions or contains terms or stipulations contrary to their common intention, a court of equity will correct and reform the instrument so as to make it conform to the intention of the parties." *Dulany v. Rogers,* 50 Md.

524, 532; *Boulden v. Wood,* 96 Md. 332, 337, 53 A. 911; *England v. Gardiner,* 154 Md. 510, 514, 142 A. 625; cases reviewed 26 *A. L. R. 504;* 2 *Cooley, Briefs on Insurance* (2nd Ed.) 1415. The occurrence of the mistake, and the fact of agreement of both parties as contended, must be made clear beyond reasonable controversy. This we think has been done in the present case. The insured signed an application for a policy of $50 and paid premiums for so much insurance, yet the policy as drafted appears to give insurance in the amount of $500, and the condition of the writing which would lead to the error has been shown. *Showman v. Miller,* 6 Md. 479.

A year elapsed between the issuing of the policy and the death of the insured, and the objection on the ground of mistake was not made until the policy was brought back to the company after the death; and a question of laches is raised in defense to the application for reformation. But, of course, the mistake could not have been discovered earlier by any reasonable effort, and the lapse of time which might serve as a defense on this ground does not begin to run until the discovery. *Keedy v. Nally,* 63 Md. 311; *Hunt v. Stuart,* 53 Md. 225, 228; *McDowell v. Goldsmith,* 2 Md. Ch. 370, 391; *Chew v. Farmers' Bank,* 2 Md. Ch. 231, with Brantly's note.

In the making of the error in the office of the insurer there would seem to have been no such negligence as defeats an application for reformation. There could hardly be a less negligent error, and the existence of negligence in even the slightest degree does not prevent reformation. If it did, there would have been much less reformation by courts of equity in the past. In many, if not most, of the instances of correction of scrivener's errors, the scrivener has been the agent of the complainant alone. It was so in *Boulden v. Wood, supra,* and in *Popplein v. Foley,* 61 Md. 381. "The fact, however, that the defective instrument may have been drawn up by the party seeking relief is immaterial, if a proper case be made out." *Kerr, Fraud and Mistake* (6th Ed.) 611. "It is not every negligence that will stay the hand of the court. The conclusion from

the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty." *Pomeroy, Equity Jurisprudence,* sec. 856; cases reviewed, 45 *A. L. R.* 700.

The principle that mistake of one party alone, not a mutual or common mistake, will not be corrected by reformation, cannot prevent relief in this instance, for the mistake was a common one within the meaning of that rule. It is not meant by it that the error in drafting by the agent of one party cannot be relieved. Insurance policies are always drafted by agents of the company, but that fact does not interfere with correction of mistakes in the drafting. 2 *Cooley, Briefs on Insurance* (2nd Ed.) 1424. The mistake common to both parties which supports reformation in these cases is in the supposition of both that their final writing states their agreement correctly. As Chief Judge Alvey put it in *Stiles v. Willis,* 66 Md. 552, 558, 8 A. 353, 354: "The proof must establish, incontrovertibly, that the error or mistake alleged was common to both parties; in other words, it must be conclusively established that both parties understood the contract as it is alleged it ought to have been expressed, and as in fact it was, but for the mistake alleged in reducing it to writing."

It is obvious that the effect of reformation, if granted, must influence the action of the court of equity on the application for it. Cases reviewed, 44 *A. L. R.* 78; *Restatement, Am. L. Inst., Contracts,* sec. 504. In *Philpott v. Elliott,* 4 Md. Ch. 273, reformation of a lease to correct a mistake in a boundary line was denied after the defendant had built over the correct line. And see *Eberle v. Heaton,* 124 Mich. 205, 82 N. W. 820. In *Mullen v. Cronan,* 90 N. J. Eq. 392, 107 A. 793, the court denied reformation of an assignment of shares of stock after money derived from a sale of them had been expended by the assignee and the executor of his will in the erection of a new building. The defense is more frequently met with, and its applications illustrated, in the equitable action for money had and received after payment by mistake. Cases re-

viewed *L. R. A.* 1917E, 350, and 25 *A. L. R.* 129; *Standish v. Ross*, 3 Ex. 527; *Baylis v. Bishop of London* (1913) 1 Ch. 127; *Holt v. Markham* [1923] 1 K. B. 504, 514; *Jones v. Warring & Gillow*, [1926] A. C. 670; *Kerr, Fraud & Mistake* (6th Ed.) 635. And see *Turner v. Schwarz*, 140 Md. 465, 477, 117 A. 99; *Bartlett v. Smith*, 162 Md. 478, 484, 160 A. 440, 161 A. 509. Generally, repayment is not obtainable in so far as it may fail to leave the defendant *in statu quo*, or in a position to avoid detriment by some readjustment on his side. This raises a question of fact which is, of course, to be determined in each case from its circumstances.

The defendant here testifies that she was induced, by the apparent availability of $500 of insurance payable to her on this policy, to contract and pay a funeral bill of $400. We are hardly permitted to suppose that she would have contracted a bill of only $50 if the policy had correctly stated the amount. It is more reasonable to suppose that she would even then have provided a more costly funeral, in expectation of paying for it from her other resources, the uncontested insurance for $175, and the still further resources she appears to have had at least temporarily available. Her testimony is that with all her resources she could not afford to pay $400 for the funeral, and she evidently made some part of the expenditure from the money expected from this policy over and above the amount of $50. For exactly what part she relied on this policy it is not possible to determine from the testimony given. She could not now estimate it except by conjecture, because when she contracted for the funeral the problem arising from a reduced amount of insurance was not actually presented to her and decided. And it is the opinion of this court that in the exercise of its duty, in granting reformation, to avoid detriment to an innocent defendant whose position has altered, an estimate must be made by the court, to protect the defendant from loss, to the best of the court's ability in view of all the evidence. To this end it is held that reformation should be granted as prayed in the bill of complaint,

and the policy held paid and canceled, upon the complainant's paying to the defendant the sum of $200.

> *Decree reversed, and cause remanded for a decree in accordance with this opinion, with costs to the appellee.*

PARKE and SLOAN, JJ., concur in the result.