T. Arnold Ward et al. v. Ray C. Lyman.

November Term, 1936.

Present: Powers, C. J., Slack, Moulton and Sherburne, JJ., and Sturtevant, Supr. J.

Opinion filed January 5, 1937.

*Andrew C. Calvi* for the defendant.

*James P. Leamy* and *Christopher A. Webber* for the plaintiff.

MOULTON, J. █ The jurisdiction of a court of equity to reform a written instrument upon the ground of mistake will be exercised only when the mistake is established by evidence so strong and conclusive as to place it beyond reasonable doubt. *Pennock* v. *Goodrich*, 102 Vt. 68, 72, 146 Atl. 1; *Exrs. of Judevine's Est.* v. *Trustees of Caledonia County Grammar School*, 93 Vt. 220, 231, 106 Atl. 836; *Fife & Child* v. *Cate*, 84 Vt. 45, 47, 77 Atl. 947; *Fairbanks* v. *Harvey*, 83 Vt. 283, 285, 75 Atl. 268; *Fuller* v. *Knapp*, 82 Vt. 166, 168, 72 Vt. 688; *Shattuck* v. *Gay*, 45 Vt. 87, 90. In *Bailey* v. *Woodbury*, 50 Vt. 166, 169, it is said that the proof must be "beyond any fair doubt"; in *Preston* v. *Whitcomb*, 17 Vt. 183, 188, and *Griswold* v. *Smith*, 10 Vt. 452, 455, "irrefragable"; in *Goodell* v. *Field*, 15 Vt. 448, 452, "clear and strong leaving no doubt"; in *Lyman* v. *Little*, 15 Vt. 576, 592, "clear and undoubted"; in *Cleavland* v. *Burton*, 11 Vt. 138, 139, "clear, satisfactory and conclusive"; in *Barry* v. *Harris*, 49 Vt. 392, 395, "of the strongest and most conclusive

character"; in *Abbott* v. *Flint's Admr.*, 78 Vt. 274, 277, 62 Atl. 721, "clear and unequivocal." All these expressions are essentially the same in meaning.

The weight of the evidence is, of course, for the trier of the facts who has seen the witnesses on the stand, observed their demeanor and manner of giving testimony, and can judge of their credibility from matters which cannot be adequately presented to us by the transcript. There may be instances where the testimony is so slight and inconclusive in character that, upon review, it can be said, as a matter of law, that it is insufficient as proof beyond a reasonable doubt. But where there is clear, distinct and substantial evidence tending to show the existence of mistake, the degree of certainty which it implants in the mind of the trier is a matter for him alone. When, therefore, there is a finding that the fact has been established beyond a reasonable doubt, we must accord it the same standing as a verdict, required by law to be based upon proof to this extent, which has been expressly approved by the trial court. *Platt, Admx.* v. *Shields & Conant*, 96 Vt. 257, 271, 119 Atl. 520.

The findings state that the parties made a verbal agreement for the sale of a certain farm, and employed Vernon J. Loveland, an attorney, to draw a written contract in accordance therewith. The latter dictated the instrument to his stenographer in their presence. Among the terms of the contract so agreed upon and dictated were provisions that the installments to be paid by the defendant should be applied first to meet a charge of 6 per cent interest upon the unpaid balance of the purchase price, and that the defendant should cut, but should not remove, the hay from the farm. In transcribing the paper the stenographer omitted reference to the payment of interest, and wrote that the plaintiffs should cut the hay. Mr. Loveland had stepped out of his office when the instrument was completed and handed to the parties. They read over only the part of the contract that described the property to be conveyed, and signed it. On their way home the plaintiffs discovered that the typewritten contract differed from the terms agreed upon, and immediately returned to the attorney's office and pointed out the omission and mistake. The attorney communicated with the defendant, who did not deny the errors, but said that he wanted time to think it over, and later refused to correct them and gave notice that he was

going to depend upon the written contract, no matter what the original intention was.

The chancellor says: "I am convinced and find beyond a reasonable doubt that Loveland's stenographer failed to transcribe the contract as dictated by Loveland; that the act of the stenographer in typewriting the contract, omitting to state that the payments to be made by the defendant were to be applied first to the payment of interest at 6 per cent per annum on the unpaid purchase price and the balance to be applied upon the purchase price, and providing that the plaintiffs should cut and harvest the customary amount of hay on the premises and not remove said hay at any time from the premises were mistakes; that Loveland and his stenographer were then acting for both the plaintiffs and the defendant; that the mistakes of the stenographer and the execution of the contract by the parties as typewritten were the mutual mistakes of the parties; and that because of those mistakes the typewritten contract does not express the true agreement between the parties."

■■ In *Fairbanks* v. *Harvey*, 83 Vt. 283, 285, 75 Atl. 268, the master, to whom the cause had been referred, found the facts as to the negotiations for the contract, by a fair preponderance of the evidence, but not beyond a reasonable doubt, and relief was refused. In *Fife & Child* v. *Cate*, 84 Vt. 45, 47, 77 Atl. 947, the fact that the verbal agreement was, and was mutually intended to be, a full settlement between the parties, was not found beyond a reasonable doubt, and it was held that this, being the standard to which the writing could be reformed, must be so established. Here, of course, the standard is the verbal agreement as to the terms upon which the farm was to be sold, and, particularly, the provisions regarding the payment of interest and cutting the hay. The chancellor has found that these terms were a part of the verbal contract, but has not said specifically that he has done so beyond a reasonable doubt. He has, however, in the findings last quoted done the equivalent, since he has found, by the requisite degree of proof, that the errors in the written contract were mistakes, and because of them the true agreement was not expressed. This is enough, since we must construe the findings to support the decree in favor of the plaintiffs if we can reasonably do so. *Gardner* v. *Gauthier*, 101 Vt. 147, 149, 141 Atl. 682. It necessarily follows, since these mistakes and the divergence from the original agreement were

proved beyond a reasonable doubt, that the chancellor was satisfied to the same extent concerning the terms of the contract.

That this finding is amply supported by the testimony of the plaintiffs, Mr. Loveland, and a witness, Ballard, who was present at the time and heard the preliminary negotiations and the dictation, cannot be gainsaid. The fact that the defendant denied the agreement and the mistakes does not prevent the proof from satisfying the chancellor beyond a reasonable doubt. There was such a denial in *Griswold* v. *Smith,* 10 Vt. 452, yet the evidence of the existence of a mistake was found to be most conclusive and admitting of no doubt. *Stines* v. *Hayes,* 36 N. J. Eq. 364, 369, is to the same effect. Relief will not be refused merely because the evidence is conflicting if the trier, after weighing it, is convinced by the requisite degree of proof. *Brown* v. *Lamphear,* 35 Vt. 252, 259; *Hutchinson* v. *Ainsworth,* 73 Cal. 452, 15 Pac. 82, 2 A. S. R. 822, 827.

A mutual mistake, in equity, is one that is common to all the parties to the written instrument. *Iby* v. *Wrisley,* 104 Vt. 148, 153, 158 Atl. 67; *New York Life Ins. Co.* v. *Kimball,* 93 Vt. 147, 151, 106 Atl. 676. The mistake of a scrivener acting for all parties is a mutual mistake. See *Dietrich* v. *Hutchinson,* 73 Vt. 134, 141, 50 Atl. 810, 87 A. S. R. 698; *Hoyt* v. *Hoyt,* 77 Vt. 244, 247, 59 Atl. 845; *McKenzie* v. *McKenzie,* 52 Vt. 271, 276, 277; *West* v. *Suda,* 69 Conn. 60, 36 Atl. 1015, 1016; *Parchen* v. *Cheeseman,* 49 Mont. 326, 142 Pac. 631, 635, 146 Pac. 469, Ann. Cas. 1916A, 68.

The defendant argues that because the plaintiffs signed the written contract without having read all of its terms, they were negligent and are not entitled to prevail. We have held that where there is no fraud or circumvention it is not for courts of equity to relieve a party from the mere results of his own carelessness, negligence or laches not induced by the conduct of the other party, since equity assists the vigilant, not the negligent. *Crompton* v. *Beedle & Thomas,* 83 Vt. 287, 300, 75 Atl. 331, 30 L. R. A. (N. S.) 748; *King* v. *White,* 63 Vt. 158, 166, 25 Atl. 535, 25 A. S. R. 752; *Durkee* v. *Durkee,* 59 Vt. 70, 74, 8 Atl. 490; *Bishop* v. *Allen,* 55 Vt. 423, 426, 427; *Hyde* v. *Hyde,* 50 Vt. 301, 304; *Francis* v. *Parks,* 55 Vt. 80, 81; *McDaniels* v. *Bank of Rutland,* 29 Vt. 230, 238, 70 A. D. 406. But, although the jurisdiction to relieve against mistake appears to have its origin in Roman Law, the Roman maxim, *"nec stultis*

*solere succuri sed errantibus,"* was in an early case denied application. Scrutton, "Roman Law Influence in Chancery," 1 Essays in Anglo-American Legal History, 208, 223, citing Cary's Rep. (ed. 1650), 17 (Anonymous, 21 Eng. Reprint, 9). Today it is recognized that "this principle is not to be accepted as of universal application and that even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." *Institute Bldg. and Loan Ass'n* v. *Edwards,* 81 N. J. Eq. 359, 86 Atl. 962, 964; *McKenzie* v. *McKenzie,* 55 Vt. 271, 277; *Perkins* v. *Kirby,* 39 R. I. 343, 97 Atl. 884, 888; *Panhandle Lumber Co.* v. *Rancour,* 24 Idaho, 603, 611, 135 Pac. 558; cas. cit. note, 45 A. D. 633; 2 Pomeroy Eq. Juris. (4th ed.), par. 856. Where no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act done through the influence of the mistake, no reason is apparent why it should not be corrected, although the highest degree of vigilance has not been exercised and, indeed, a court of equity should be liberal in granting relief under such circumstances. *Stoeckle* v. *Rosenheim,* 10 Del. Ch. 195, 87 Atl. 1006, 1008; *Seeley* v. *Bacon,* (N. J. Ch.), 34 Atl. 139, 141.

██ ██ In *New York Life Ins. Co.* v. *Kimball,* 93 Vt. 147, 153, 106 Atl. 676, 678, it is held that "the instances in which equity may lend its aid to correct mistakes may be divided into four classes: First, where the mistake is mutual as to the facts upon which it is based, or as to the terms and stipulations embraced therein; second, where only one of the parties is under such a mistake, either of the facts or stipulations, and such mistake has been occasioned by the fraud, deceit or imposition in any form of the other; third, where only one of the parties is under such mistake, and this has occurred from no fault of either party, but not through the negligence or inattention of the party seeking relief; and fourth, where only one party is under such mistake, and this has occurred from no fault of the other, but solely through the negligence and inattention of the party seeking relief. In the first two classes, equity will unhesitatingly afford relief, either in reforming or cancelling the mistaken instrument. In the third class equity will withhold its aid if the mistake is the result of negligence or inattention; and in the fourth class equity will refuse its aid, except under very strong and extraordinary circumstances showing imbecility or some-

thing that would make it a great wrong to enforce the agreement.'' From this it appears that the rule that negligence will bar relief is applicable only to cases of unilateral mistake not caused by the fraud or imposition of the other party. It is said in *Panhandle Lumber Co.* v. *Rancour*, 24 Idaho, 603, 612, 135 Pac. 558, 560: "If a mistake has been mutual, the fact that the party who is to be injured thereby, if the mistake be not corrected, was negligent in making the mistake ought not to prevent a court of equity from correcting it, unless the mistake was wilful or fraudulent on his part and done with a view to injuring or damaging the other party.'' We may, perhaps, question the accuracy of the last clause in the above quotation, because a mistake is an unintentional act or omission arising from ignorance, surprise, imposition or misplaced confidence, and it exists when a person under some erroneous conviction of law or fact does or omits to do some act which, but for the erroneous conviction, he would not have done or omitted. Bouvier, Law Dict. (Rawle's 3rd revision) tit. "Mistake.'' It is distinguished from fraud by the absence of knowledge and intention. 2 Pomeroy, Equity Juris. (4th ed.) par. 839. Being of such a nature, it is hard to see how a mistake can be, under any circumstances, something that is wilful or fraudulent or done with a view to causing injury or damage. It may be supposed that in such a situation equity would refuse relief, but upon another ground than that of negligence. Nevertheless the opinion is otherwise in accord with *New York Life Ins. Co.* v. *Kimball*, *supra*.

▮ Whether a mistake is to be corrected depends always upon the circumstances of the case. See cas. cit. note 65 A. S. R. 495. The mere failure to read the instrument before executing it is not a controlling factor. 5 Pomeroy, Eq. Juris. (4th ed.) par. 2101; *Boulden* v. *Wood*, 96 Md. 332, 53 Atl. 911, 913; *Perkins* v. *Kirby*, 39 R. I. 343, 97 Atl. 884, 888; *West* v. *Suda*, 69 Conn. 60, 36 Atl. 1015, 1016; *In re Patterson's Est.*, 199 Iowa, 362, 202 N. W. 8, 10; *Parchen* v. *Cheeseman*, 49 Mont. 326, 142 Pac. 631, 635, 146 Pac. 469, Ann. Cas. 1916A, 681. In *Brown* v. *Lamphear*, 35 Vt. 252, the orator signed and delivered a deed without reading it, and later discovered that an agreed reservation of a right to use the water of a spring upon the premises had been omitted therefrom by the scrivener. The court said (p. 259): "The defendant takes by the conveyance

a value which he did not purchase, and the case presents such elements of mistake and surprise as afford a solid ground for relief." In *Bishop* v. *Allen*, 55 Vt. 423, 426, 427, the orator did not read the mortgage, and relief was denied; but the mistake was not mutual.

If reformation is denied in the case at bar, the mistake being mutual, the plaintiffs alone will suffer injury; the defendant will gain an unconscionable advantage; he will receive a value which he has not purchased, and to which he is not entitled by the terms of the true contract. To use the language of *McKenzie* v. *McKenzie, supra*, 277, he ought not to be allowed to speculate upon the plaintiffs' blunders. No one will be prejudiced if relief is granted, and no reason is perceived for disturbing the result reached by the chancellor.

We have given attention to all the questions raised by the defendant. Although it is claimed by the plaintiffs that the bill of exceptions does not bring the transcript into the case for the purpose of testing the sufficiency of the evidence to support the findings, we have considered it unnecessary to decide that point.

*Decree affirmed and cause remanded.*