**The Travelers Insurance Co. v. Edward M. Bailey**

[197 A.2d 812]

December Term, 1963

Present: **Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.**

Opinion Filed February 4, 1964

*Fitts & Olson* for the plaintiff.

*Parker & Ainsworth* for the defendant.

**Barney, J.** The plaintiff insurance company has come into equity asking for reformation of the annuity provisions of a life insurance policy on the basis of mistake. Thirty years after issuance of the original policy it tendered the defendant insured an amended policy which he refused. On trial, the chancellor found that the amended policy represented the true insuring agreement originally entered into by the parties and allowed reformation. The defendant appealed.

At the instance of his mother, the defendant, when nineteen, submitted an application to an agent of the plaintiff for a life insurance policy. The plan requested in the application was one insuring the defendant's life for five thousand dollars, with an annuity at age 65 for five hundred dollars a year for the balance of his life, ten years certain. When the application was accepted and the policy prepared in the home office of the plaintiff, the correct descriptive information was inserted on the wrong policy form. The printed portion of the form used yielded the correct life insurance contract, but produced an annuity obligation to pay five hundred dollars a month for life,

100 months certain. The application was made a part of the policy, by its terms. In accordance with its usual practice, the plaintiff did not retain a copy of the policy itself, but kept a record of the information permitting reproduction of the policy if the occasion demanded.

The premiums were regularly paid on the policy issued in 1931, and about the middle of 1961 the actual policy came into the possession of the defendant for the first time. The semi-annual premiums charged and paid were identical with the prescribed premium for five thousand dollars of life insurance with annuity at age 65 of five hundred dollars annually, with payment for ten years certain. This $40.90 semi-annual premium was applicable only to that policy plan, issued at the defendant's then age of 19, and no other. The plaintiff had no rate for and did not sell a policy for five thousand dollars life insurance with an annuity at age 65 of five hundred dollars monthly, payment for one hundred months certain.

After being told by a third party that his policy could not have the provisions he claimed for it, the defendant took the policy to the office of the defendant's agent that sold the policy and made inquiry. Shortly thereafter, in late 1961, the amended policy was tendered. There is no evidence that the defendant then knew that his original policy provided for an annuity payment larger than he was entitled to in view of the premium paid and the life insurance coverage purchased.

█ Vermont law, like that of many jurisdictions, imposes upon the party seeking reformation the duty of establishing, beyond a reasonable doubt, the true agreement to which the contract in question is to be reformed. *deNeergaard* v. *Dillingham*, 123 Vt. 327, 331, 187 A.2d 494. That this was accomplished, in the judgment of the chancellor, is demonstrated by this finding in particular:

> The only agreement that the plaintiff and defendant made was for $5,000 insurance with annuity of $500 per year at attained age 65, 10 years certain.

Adequate evidentiary support for all findings of fact, including this one, made in this case by the chancellor, appears from the transcript of the evidence.

Indeed, in his appeal the defendant does not question any of the findings relating to the facts already recited. His principal attack

on the decision relates to the chancellor's finding that the mistake in issuing the policy furnished the defendant came about through no fault of the defendant, but solely through the negligence and inattention of the plaintiff. This, says the defendant, is a finding of unilateral mistake, and therefore, under the authority of *New York Life Insurance Co.* v. *Kimball,* 93 Vt. 147, 153, 106 Atl. 676, is not grounds for reformation.

Since that case was only the first of four trips to this Court for the parties in the course of this litigation (see 94 Vt. 100, 108 Atl. 921; 96 Vt. 19, 116 Atl. 119; and 98 Vt. 192, 126 Atl. 553), the holding in the first case should be examined in the light of its later construction. Justice Miles, in 94 Vt. at 102, explains the holding of the majority opinion in 93 Vt. 147, which he also wrote. He points out that the endorsement involved was not subject to reformation at equity because it was not a contract, but was unilateral, and that the mistake made in the endorsement lacked mutuality and was made through the company's negligence. Clearly, without the participation of the insured there could be no antecedent agreement to which this endorsement could be reformed. His opinion in the second case also suggests that Justice Miles felt the insurance company was ineligible for equitable relief because it had an adequate remedy at law, and he holds that the company was entitled to raise the issue of its mistake as a defense to the claim of the insured.

In the first *New York Life Insurance Co.* v. *Kimball* case in 93 Vt., Justice Miles commented on p. 153, just ahead of his definition of the classes of mistakes, "The law of a case cannot be determined from a brief quotation of portions of the opinion separate from the facts of a case, especially where the law upon the subject has many exceptions, as in the subject now under consideration." This thought is particularly applicable to cases dealing with mistake and reformation, including the *New York Life Insurance Co.* v. *Kimball* cases.

That view is echoed in 3 Corbin, Contracts, §597, p. 583, (1960) in the following language and citing all of the *New York Life Insurance Co.* v. *Kimball* cases:

> "Cases involving mistake are difficult of classification because of the number and variety of factors to be considered. These factors are found in many combinations. The citation of authorities for a rule stated in general terms is made perilous by this

fact. It is equally perilous, and it may be positively harmful, to construct a rule of law, unless it is so limited as to be applicable to a particular combination of many factors. If this exact combination does not recur, what we really have is merely one precedent, and not a rule."

One variety of classification is suggested by the difference between a subsequent erroneous recording or transcription of a contract already in fact agreed to by the parties, and a mistake or misunderstanding occurring while the parties are seeking to arrive at or believe they are arriving at an agreement. In the first case an agreement already exists, while in the second considerations of mutuality, together with knowledge of and responsibility for the mistake, weigh heavily in determining whether or not an enforceable agreement, or a right to relief, exists. Unfortunately, language appropriate to the second situation has sometimes been transposed to the first, where it may be both inappropriate and misleading. See 3 Corbin, Contracts §608 (1960).

Where, as here, an antecedent contract has been established by the requisite measure of proof, equity will act to bring the erroneous writing into conformity with the true agreement. *Burlington B. & L. Ass'n* v. *Cummings,* 111 Vt. 447, 453, 17 A.2d 319. On the basis of the maxim, "Equity regards that as done which ought to be done," equity will deal generously with the correction of mistakes. *Stone* v. *Blake,* 118 Vt. 424, 427, 110 A.2d 702. This power has been regularly and frequently invoked in connection with real estate transactions, but there is nothing that requires that equity limit its application to that kind of case.

Other courts have exercised the equitable power of reformation in similar cases. In *New England Mutual Life Insurance Co.* v. *Jones,* D.C., 1 Fed. Supp. 984, a clerical mistake in the policy was discovered after the death of the insured when a double indemnity benefit claim for accidental death was made. The policy provided for double indemnity on the basis of the face amount of the policy, but in the blank space stating the obligation the figure $5,000.00 had been entered. This considerably increased the double indemnity figure above that computed on the face amount of the policy. Premiums had been assessed and paid on the basis of the correct figure. Reformation was allowed.

In *Stamen* v. *Metropolitan Life Insurance Co.*, 41 N. J. Super 135, 124 A.2d 328, the insured received a policy, after a series of policy conversions, which inadvertently included a provision for disability benefits. The original application accepted by the company requested a policy without such provision, and the premiums had been assessed on the basis that no such benefits were payable. Reformation was allowed.

A leading and frequently cited case dealing with this problem is *Columbian National Life Insurance Co.* v. *Black*, 35 F.2d 571, 71 A.L.R. 128. In that case the reverse side of the "ordinary life" form erroneously had the valuation schedules of an "endowment" policy printed on it. These schedules showed a value of $10,000.00 when at the same point of maturity the ordinary life policy value was $3,040.00. The policy was sold and the premiums were paid on it as an ordinary life policy. The premiums necessary to produce the endowment values would have been about twice as much. The court held that the true contract was arrived at when the company accepted the insured's application for an ordinary life policy, and allowed reformation even though 20 years had elapsed since the issuance of the policy.

Each of these cases speak of the reformation as justified either because there was "mutuality" of mistake or because the policyholder knew or ought to have known that there was a variation between the policy described in the accepted application and the one handed the insured. To insist on enforcement of the contract once knowledge of the error is acquired by the insured is held to be unconscionable, and classified as then a unilateral mistake known to the other party, which supports reformation. If the mistake exists in the writing unknown to both parties, it is classified as "mutual" and reformation is allowed.

Since these cases support reformation irrespective of the insured's knowledge of the existence of the mistake conferring a benefit on him beyond the bargain, talk of "mutual" or "unilateral" mistake seems to be of little help in this kind of situation. *Metropolitan Life Insurance Co.* v. *Henriksen*, 6 Ill. App.2d 127, 126 N.E.2d 736, granted reformation for a clerical error increasing a life annuity payable after 20 years from $10.51 to $1,051.00. The error involved was

not discovered until 18 years after issuance of the policy, and it made no difference whether the insured knew of the error or not.

If, in this kind of case, talk of "mutuality" of mistake is unnecessary, much confusion can be avoided. Invariably, two mistakes are involved. There is a natural tendency to concentrate on the making of the clerical error in the writing as the critical mistake involved, when the true crucial error is the mistaken belief of the parties about the correctness of the written instrument. When a test of "mutuality" is applied to the clerical error, the confusion is compounded, since the concern of the court should be with the belief or knowledge of the parties. The concept of "mutuality" adds nothing to the right to a remedy in this type of case. It is important as a concept in other, different, reformation situations. Applying to all the common linguistic label of "mutuality" gives to unlike situations an illusion of similarity. This invites the misapplication of principles, sound for one type of situation, to a different type, for which they are unsound.

Accordingly, we hold that where there has been established beyond a reasonable doubt a specific contractual agreement between parties, and a subsequent erroneous rendition of the terms of the agreement in a material particular, the party penalized by the error is entitled to reformation, if there has been no prejudicial change of position by the other party while ignorant of the mistake. If such change of position can equitably be taken into account and adjusted for in the decree, reformation may be possible even then. *Mutual Life Insurance Co. of Baltimore* v. *Metzger,* 167 Md. 27, 172 Atl. 610; see also *Brown* v. *Lamphear,* 35 Vt. 252. Mistakes generally occur through some carelessness, and failure to discover a mistake may be in some degree negligent, but unless some prejudice to the other party's rights under the true contract results, so as to make its enforcement inequitable, reformation will not be refused because of the presence of some negligence. *Ward* v. *Lyman,* 108 Vt. 464, 471, 188 Atl. 892; *Mutual Life Insurance Co. of Baltimore* v. *Metzger, supra,* 167 Md. 27, 30, 172 Atl. 610.

Change of position is raised as an issue by the defendant. It cannot be said that the defendant acted in reliance on the terms of the policy which, he testified, were not exactly known by him until he received the policy in 1961. But he argues that the mere passage of time, in this case 30 years, should overcome the chan-

cellor's finding to the contrary and establish a change of position. But clearly this aging process was inevitable, and not a prejudicial act induced by the mistaken term in the policy. The defendant has not demonstrated that he was prejudiced by the existence of the error. *Ward* v. *Lyman, supra,* 108 Vt. 464, 471.

Reformation was properly granted.

*Decree affirmed.*