**Burlington Savings Bank v. Gerald M. Rafoul et al**
[ 209 A.2d 738 ]

December Term, 1964

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed February 2, 1965

*Francis R. Peisch* for plaintiff.

*Wick, Dinse & Allen* for defendant insurance companies.

**Keyser, J.** The plaintiff, on the ground of mutual mistake, requests reformation of two fire insurance policies issued by the defendants, Westchester Fire Insurance Company and Fireman's Fund Insurance Company. · It seeks to have the named insured in those policies changed from J. J. Inc. to Gerald M. Rafoul. Upon hearings and findings of fact, the court entered a decree reforming the policies and ordered payment of the agreed amount of fire loss. The case is here on appeal from the decree by each defendant insurance company. There being no exceptions or objections raised in defendants' brief to any of the findings, the question presented by the appeal is whether the judgment is supported by the findings, *Neverett v. Towne*, 123 Vt. 45, 46, 179 A.2d 583·; and this court must construe the findings so as to support the judgment, if possible, *deNeergaard v. Dillingham*, 123 Vt. 327, 330, 187 A.2d 494.

On March 28, 1960, defendant Gerald M. Rafoul purchased from North Star Corporation property used as a restaurant located on the west side of Shelburne Road in Shelburne, Vermont. On the same date he gave a first mortgage to plaintiff, Burlington Savings Bank, and a second mortgage to North Star Corporation. The mortgage to the plaintiff required the mortgagor to keep the buildings on the property insured against loss or damage by fire. Rafoul covered the

buildings on the property with fire insurance in companies not parties to this action. The policies were issued in the name of Gerald M. Rafoul through the T. S. Peck Company Agency of Burlington as a consequence of Rafoul's talk with W. J. Newcomb, president of the agency. Rafoul told Newcomb that he was going into the restaurant business and needed insurance. Previous to the issuance of these policies, the agent of the defendant companies examined the property to be insured and agreed to insure it. In May 1960, Rafoul formed the J. J. Inc. corporation to operate the restaurant. In June 1960, Rafoul, acting as president of J. J. Inc., advised the Peck Agency to change the named insured in these original policies to J. J. Inc., which they did. Thereafter, the Peck Agency as agents of the insurance companies issued all subsequent policies and renewals with J. J. Inc. as owner believing it actually owned the real estate insured. All policies with standard mortgage clauses attached named plaintiff as first mortgagee with loss payable to the plaintiff bank and North Star Corporation as second mortgagee. All policies were deposited with plaintiff bank. Title to the property described in the policies was at all times in Gerald M. Rafoul, which fact was known to the plaintiff. The policy of defendant Westchester Fire Insurance Company was dated December 12, 1960, and that of defendant Fireman's Fund Insurance Company on May 5, 1962. On May 12, 1962, the restaurant building was partially destroyed by fire, the amount of the loss being agreed to at $8,918.00.

The plaintiff, being the party seeking reformation, has the burden to establish, beyond a reasonable doubt, the true agreement to which the contract in question is to be reformed. *Travelers Insurance Co.* v. *Bailey,* 124 Vt. 114, 116, 197 A.2d 813. From the findings of fact and decree for reformation it is evident the court determined that the plaintiff had met its burden of proof.

The first point briefed by the defendants is that even Gerald Rafoul as petitioner would not have been entitled to relief by reformation as plaintiff is seeking to do. But that is not the question here. Reformation is asked for by the plaintiff as the mortgagee of Gerald Rafoul and as a party having an interest in the policies issued on the property in question. The plaintiff had no dealings with the Peck Agency or the defendant companies for the insurance coverage as did Rafoul. Rafoul was contractually bound under the mortgage to obtain it.

The two policies in question were issued by the Peck Agency for the defendant insurance companies with loss payable to Burlington Savings Bank, first mortgagee, and North Star Corporation, second mortgagee, subject to the mortgagee clause attached to the policies. The property insured was the identical property which Rafoul purchased in March 1960. It was the very same property the Peck Agency agents had inspected to determine the acceptability of the risk, and which to their knowledge at all times was mortgaged to the plaintiff bank and North Star Corporation. The property described in the policies was the identical property intended to be covered with insurance by the Peck Agency for its several companies from the very beginning and for which premiums were paid and accepted. The Peck Agency, acting for the defendant companies, intended to insure the restaurant property on the west side of Shelburne Road, which they had inspected, not only for the protection of its true owner but also of the mortgagees.

■ A mistake is an unintentional act or omission arising from ignorance, surprise, imposition or misplaced confidence, and it exists when a person under some erroneous conviction of law or fact does or omits to do some act which, but for the erroneous conviction, he would not have done or omitted. *Ward* v. *Lyman,* 108 Vt. 464, 472, 188 Atl. 892; 76 C.J.S. Reformation of Instruments, §25, page 348. The mistake here first arose when the original policies were endorsed to show title in J. J. Inc. rather than continuing them in the name of the true owner, Gerald M. Rafoul. It came about through no fault or action of the plaintiff. Rather, it resulted from Rafoul telling the Peck Agency in June 1960, after he had formed J. J. Inc. and while acting on its behalf, to change the policies then effective from Rafoul, the named insured, to the corporation. This mistake was continued concurrently in the minds of both Rafoul and the agents of the Peck Agency without interruption or correction from June 1960 down to the time the two policies of the defendants were issued by their agents, the Peck Agency.

There is no evidence or finding of any increase in hazard or of any prejudice to the rights of the insurance companies arising from the fact ownership was incorrectly written in the policies. No change in the defendants' position to their detriment caused by the mistake is shown or is it so claimed by the defendants. The insurance contracts contemplated that the property described therein was to be

insured according to its title. It is evident that both Rafoul and the agents of the defendants assumed and believed, though incorrectly, that the property was thus insured. Thus culminated the mistake common to both Rafoul and the agents of the insurance companies, and it resulted in both parties doing what neither intended to do. "A mutual mistake in equity is one that is common to all the parties of the written instrument." *Ward* v. *Lyman,* 108 Vt. 464, 470, 188 Atl. 892. In *Milford Yacht Realty Co.* v. *Milford Yacht, Inc.,* 136 Conn. 544, 72 A.2d 482, the court said: ". . . the court exercises the power of reformation where the mistake is common to both parties and by reason of it each has done what neither intended." The true agreement of those parties was to insure the property in its correct ownership with the mortgagees interest therein shown. This was the original insurance contract between Rafoul and the company through its agent, the Peck Agency, and is established by the evidence and findings. In *Travellers Ins. Co.* v. *Bailey,* supra, at page 118, we held: "Where, as here, an antecedent contract has been established by the requisite measure of proof, equity will act to bring the erroneous writing into conformity with the true agreement. *Burlington B. & L. Assn.* v. *Cummings,* 111 Vt. 447, 453, 17 A.2d 319. On the basis of the maxim, 'Equity regards that as done which ought to be done,' equity will deal generously with the correction of mistakes. *Stone* v. *Blake,* 118 Vt. 424, 427, 110 A. 2d 702." See also *Dutton* v. *Davis,* 102 Vt. 450, 452, 156 Atl. 531.

In the *Davis* case, supra the court said at pp. 452-453: "Under the maxim aforesaid, equity will deal generously in the correction of mistakes. In relation to conveyances of real estate or attempts to that end, it makes no difference to a court of equity whether the mistake or omission is in regard to a statutory or common law requisite; it makes no difference whether the parties failed to execute such an instrument as they intended, or mistook the operative effect of the one they did execute. The court of chancery will carry into effect their intention." That case involved a conveyance of real estate but as Justice Barney said in the *Bailey* case, *supra,* "There is nothing that requires that equity limit its application to that kind of a case."

Defendants urge that the evidence shows negligence by plaintiff in not discovering the discrepancy between the named insured and the true owner. Thus, the defendants contend plaintiff is not

entitled to reformation. Even, if true, this does not necessarily mean that under our law reformation will be denied. We said in *Travelers Insurance Co.* v. *Bailey,* supra, at page 120, "Mistakes generally occur through some carelessness, and failure to discover a mistake may be in some degree negligent, but unless some prejudice to the other party's rights under the true contract results, so as to make its enforcement inequitable, reformation will not be refused because of the presence of some negligence. *Ward* v. *Lyman,* 108 Vt. 464, 471, 188 Atl. 892; *Mutual Life Insurance Co. of Baltimore* v. *Metzger,* 167 Md. 27, 30, 172 Atl. 610." As already pointed out, neither prejudice to the defendants' rights is shown nor is any prejudice claimed to exist. The fact that no bank employee discovered the error in the named insured being properly designated, if negligence, is not a bar to reformation in this case. See also, *Columbian Natl. Ins. Co.* v. *Black,* 35 F.2d 571, 71 A.L.R. 128; Anno. 81 A.L.R.2d 7, 66 et seq., and cases there collected and reviewed. The mere failure of a party to a contract to read the instrument before executing it is not a controlling factor. *Ward* v. *Lyman,* supra, page 472.

The defendants claim plaintiff's negligence is made all the more vivid by its failure to notify the insurer of a change in ownership. In urging this the defendants have overlooked the fact that there never was a change in the ownership of the property insured and the findings so read. This requirement in the mortgage clause never became necessary or operative. Furthermore, this is not a case of the bank as the complaining party committing a mistake concerning the issuance of the insurance agreements. Neither the record nor the findings indicate that the bank took any part in the insurance transaction nor was it a party to the execution of the policies. The mistake, as related to the bank, was made by third parties. Not only does the evidence satisfy us that there was no such negligence as will deny reformation but also there is no finding of negligence or any finding from which inexcusable action or any wilful or fraudulent act, on plaintiff's part can be said to exist.

Moreover, we further point out that the mortgagee clause in the policy provides in part as follows:

"(This entire clause is void unless name of mortgagee or trustee is inserted in space provided under this caption on the first page of the policy or by endorsement thereto.) Loss, if any, on building

items under this policy, shall be payable to the mortgagee (or trustee) as provided herein as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceeding or notice of sale relating to the property nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premiums due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

This provision expressly binds the insurer to pay a loss under the policy to the mortgagee under its mortgage *"upon the property herein described in which the aforesaid may have an interest as mortgagee."* (Emphasis added.) No reference is made that title to the property must be properly stated in the policy. Neither is anything written into this clause to indicate it was within the contemplation of the contract that it be void or could be avoided as to the mortgagee in such event. It is also clear from the above clause that the risk of the defendant companies as well as the mortgagees' interest were not affected by the status of the title. The fact that the plaintiff bank was an interested party as mortgagee and that Gerald M. Rafoul was the mortgagor of the premises insured was known to the Peck Agency at all times. Particularly, it had this knowledge beginning in March 1960 when it covered the property with fire insurance for the purchaser and owner, Gerald M. Rafoul. The amount of fire loss has been agreed to by the parties.

By its decree the court ordered reformation and that the fire loss be paid to Burlington Savings Bank and North Star Corporation. The policies issued by defendants were valid and in full force at the time the loss occurred. This places the defendants in the position of a stakeholder, having money in its hands which it owes to somebody. To say that the defendants under the circumstances shown may evade responsibility under their insurance policies would be unconscionable in the eyes of equity. It will not stand idly by and not invoke relief. Under their contract expressed in the mortgage clause,

434

the insurance companies are obligated to pay the loss as decreed by the chancellor. For this reason in addition to what we have already noted, there is no error in the decree.

*Decree affirmed.*