O’NIELL, J.
Defendant appeals from a judgment allowing plaintiff $11,000.20, as the surrender value of a life insurance policy of $10,000.
It is not disputed that plaintiff, having paid the 20 annual premiums (of $877), was, on completion of the tontine period of 20 years, on June 4, 1915, entitled to the full value of the policy, consisting of the entire reserve and the surplus then apportioned by the company. It is also admitted that the surplus was then $2,354.20. The only dispute is with regard to the amount of the reserve ; which, computed, as it was when this policy was issued, at 4 per cent, based upon the American Experience Table of Mortality, at plaintiff’s age (38), was $5,646. By mistake, the policy writer in the office of the company, in New York, wrote the amount of the reserve, “$8,646.00, eighty-six hundred and forty-six dollars,” in a space left for stating the amount, in the “List of Privileges and Conditions,” printed in red ink, in a panel, on the back of the policy.
Printed in red ink on the face of the policy, at the bottom, is this:
“Notice. — This policy and the application Üierefor taken together constitute the entire contract which cannot be varied except in writing by one of the Executive Officers printed above.”
[1] Plaintiff does not insist, or depend upon the proposition, that the “List of Privileges and Conditions” printed in the panel on the back of the policy forms a part of the contract; and, according to the jurisprudence of the country generally, it does not form a part of the contract. We are of the opinion, however, that it would not affect the case if we should hold that what is printed or written in the panel on the back of the policy forms a part of the contract; because, though the error of $3,000 in the statement of the amount of the reserve would be a cause for avoiding the contract if it had not been fulfilled, the fact that plaintiff has had the benefit of the insurance during 20 years makes it impossible for the court to undo the situation that was brought about by the contract. In fact, this is not a suit to avoid the contract, and no such judgment can be rendered.
Plaintiff claims the extra $3,000 not by virtue of the contract, but because, as he alleges, he was told by defendant’s agents when he accepted the policy, and continued to believe during the 20 years in which he paid the premiums annually, that the reserve would amount to $8,646 on completion of the tontine period. The record discloses that plaintiff is a man of means and responsibility, highly respected, whose veracity is unquestioned. But it is apparent that his memory was at fault as to some important details. He testified, and it is admitted, that when the agent first called and solicited his application for life insurance, he declined to entertain the proposition; and that r-thereafter the agent returned with another solicit- or, of more experience. Plaintiff testified:
That the agent who had first called said, on the second visit, that they had “a special policy” to offer him. That the agents then *135 exhibited the policy. That he examined it and asked the agents what would he the cash value of the policy at the end of twenty years, and that one of the agents replied:
“The sum which is written on the hack of the policy, eighty-six hundred and some odd dollars, and the surplus.”
That he (plaintiff) then asked what would be the premium, to which one of the agents replied, “Three hundred and seventy dollars.” That he (plaintiff) said, “That’s an awful big premium,” to which one of the agents replied, “Just look what you are getting,” and that he (plaintiff) then said to himself that, in addition to the $8,646, he ought to get a couple of thousand dollars more, as surplus. He was asked by his attorney whether the policy which the agents had shown him on that occasion was the same policy that was subsequently issued to him and on which he was suing the insurance company, and he replied that it was the same policy. He testified that the agents returned to his office or store two or three weeks later and brought back the policy; that he, with the agents, then examined the policy, he being “very anxious to see if that eighty-six hundred dollars was written on there”; and that, “after seeing the $8,646, which was inserted in the panel of the policy,” he accepted it, and paid the first premium.
Plaintiff was, of course, mistaken in his belief that the insurance agents had showed him, before he had signed the application for the insurance, the identical policy that is sued on; because the policy was not written until nine days after plaintiff had made the application. It is also very probable that plaintiff is mistaken in his belief that the agents said, when they solicited the insurance, that they had “a special policy” to offer him, or that the reserve on the policy offered would be $8,646; that is, exactly $3,000 more than the .amount stated in the rate book, which the agents then had before them and were examining and exhibiting. The agents knew then that they would have yet to deliver the policy and collect the first premium; which, they must have kn^wn, they would not be able to do if they made a false representation of the amount of the reserve. It is very improbable, if not quite impossible, that the agents anticipated that the policy writer in New Xork would insert, as the reserve, on the back of the policy $8,646, instead of inserting the correct amount, $5,646. The amount of the reserve was not stated in the application signed by plaintiff; and there was no other common cause — in fact no cause whatever — for the agents and the policy writer, or either of them, to make the mistake.
The policy writer, testifying under commission, admitted that he had made the mistake, in writing the policy, from the “application heading,” which was furnished him as a guide for writing the policy. The witness gave no exfcuse for the mistake; he testified that he had no authority nor reason for inserting the figures $8,646, instead of the correct figures $5,646, appearing on the “application heading.” The original “application heading” was introduced in evidence, and the amount of the reserve written therein is $5,646.
One of the two agents who had solicited and obtained plaintiff’s application for insurance died before this suit was tried. The other testified that, although, of course, he could not remember exactly what was said by him or the other agent when they solicited and obtained plaintiff’s application, he was certain that neither of them made a false representation of the amount of the reserve. He explained that they had the rate book before them, showing the amount of the reserve, correctly, $5,646; and that, for that reason, and because they would have expected that any misrepresentation of the amount of the reserve would be disclosed when the *137 policy would be delivered, it would bave been beyond reason for them to undertake to deceive the plaintiff in that respect.
[2, 3] The decree of tbe district court, as appears in the written opinion, was based upon the conclusion, from the evidence, that there was a deliberate misrepresentation made to plaintiff by the agents, “with the authority of the executive officers of defendant company,” and that the writing of the amount of the reserve $8,646, instead of the correct figures, $5,646, on the back of the policy, was not due to any mistake on the part of the policy writer. Having read and considered the evidence, however, we have come to the opposite conclusion; that is, that the writing, in the panel on the back of the policy, of the amount of the reserve $8,646, instead of the correct figures, $5,646, was simply an error on the part of the policy writer, and that plaintiff should not profit by the error.
[4] The defendant, being a mutual company, could not legally discriminate in favor of one or some of the policy holders to the prejudice of others; and the evidence does not justify a belief that a discrimination was attempted in this instance.
[5] It appears that defendant tendered to plaintiff, at the maturity of the policy, and before this suit was filed, $8,000.20, that is, $2,354.20 as the surplus and $5,646, as the reserve due under the policy. The effect of •the tender of all that we find to be due the defendant would be to compel us to condemn the defendant "to pay the costs of this suit, were it not for the statute giving appellate courts some discretion in that respect. Section 2 of the Act No. 229 of 1910 (page 388) gives appellate courts authority to tax any party to a suit for the costs of court, as the same may, in the court’s judgment, be deemed equitable. Inasmuch as the error that brought about this litigation was the error of the defendant, not the plaintiff, we have concluded, in the exercise of our .discretion, to condemn the defendant to pay the costs of court.
The judgment appealed from is amended by reducing the amount of the judgment to $8,000.20, which shall bear interest at 5 per cent, per annum from the date on which this judgment shall become final, and, as thus amended, the judgment is affirmed. The defendant is to pay the costs incurred in both courts.
PROVO STY, J., dissents.