RHEES R. ROBINSON, APPELLEE, V. MARY E. WILLIAMS ET AL., APPELLANTS.

285 N. W. 574

FILED MAY 5, 1939. No. 30515.

*Frank A. Dutton* and *Samuel D. Killen,* for appellants.

*Mockett & Finkelstein* and *Fulton Jack, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and JOHNSEN, JJ.

EBERLY, J.

This is an action in the nature of a creditor's bill wherein Rhees R. Robinson is plaintiff, and Mary E. Williams, George H. Zimmerman, in his own behalf and as executor, and others, are defendants. The prayer of the petition was for the annulment of a certain warranty deed, dated January 28, 1935, executed by George H. Zimmerman, and purporting to convey to defendant Mary E. Williams, in consideration of $1,500 received, a certain residence property in Beatrice, Nebraska, which is described in the record as No. 423 North Sixth street; and also decreeing as void a certain assignment, also executed by such Zimmerman, purporting to convey to Joseph P. Zimmerman, "all my right, title and interest which I may have or might have in an undivided one-ninth interest in the estate of my deceased father, Philip Joseph Zimmerman, now being probated in the county court of Gage county, Nebraska," which was first filed for record on March 26, 1937; and plaintiff also prayed therein for injunctive relief.

To the plaintiff's petition in the district court defendants limited themselves to a general denial. The trial of these issues resulted in a judgment for plaintiff, substantially as prayed, and from the order of the trial court overruling their motion for a new trial, the defendants severally appeal.

In view of the issues made by the pleadings, the single controlling question now presented is the sufficiency of the evidence to sustain the judgment.

Our statute provides, viz.: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights." Comp. St. 1929, sec. 20-323. See, also, Comp. St. 1929, sec. 20-808.

The record discloses without question that, preceding the commencement of the present action, a judgment was entered on the 15th day of February, 1935, in the district court for Gage county in favor of plaintiff and against defendant upon a promissory note, dated December 18,

1929, for the sum of $2,450.01, together with costs taxed at $15.41; that on March 2, 1935, execution was issued thereon to the sheriff of Gage county, who thereupon returned the same unsatisfied, "for the reason that after a diligent search I was unable to find any property on which to levy."

The undisputed evidence is that in December, 1934, the defendant George H. Zimmerman tendered the plaintiff the sum of $100 in complete settlement of his claim, and in connection therewith stated: "If you do not accept the $100, I will see you don't get anything. I will transfer everything I got and see you don't get a dime, if you don't accept $100." It is equally apparent that when the two transactions, challenged by plaintiff in this proceeding, had been completed, the defendant Zimmerman had divested himself of all property he had theretofore owned, and was a bankrupt. This defendant, in his testimony, stated that loans made to him by defendant Williams constituted the consideration for the deed of conveyance here in suit. However, he had neither recollection nor record of the times when made, nor the amounts of the respective loans advanced to him. Nor does he inform us of the aggregate of the amount thus received from Williams, except when under examination of his own attorney he testifies, as follows: "Q. How much was you indebted to Mary E. Williams? A. I wouldn't have any way of knowing the exact amount, but I did borrow money from her. Q. Give us the exact amount, Mr. Zimmerman. A, $1,500."

The testimony of defendant Williams is equally unsatisfactory. It appears that she came to the house of defendant Zimmerman's father, Philip J. Zimmerman, in 1924. The father then was the owner of No. 423 North Sixth street, which constituted his home. Soon after her arrival, Mrs. Williams became the housekeeper and in charge of the premises for the owner. She continued in that capacity until Philip J. Zimmerman's death in 1929. By direction of the senior Zimmerman she was given the use of the

home without charge for the period of one year, which terminated in 1931. George H. Zimmerman succeeded to the title of his father, and at the termination of the "free year" he rented No. 423 North Sixth street to Mrs. Williams. George H. Zimmerman had made his home at No. 423 North Sixth street ever since prior to the arrival of Mrs. Williams. He retained the use of one room for himself under the terms of their rental agreement. The evidence of the defendants is that this rental arrangement continued until these premises were conveyed to Mrs. Williams by the warranty deed of January 28, 1935. But even after the delivery of the deed the premises therein continued to be his home. Mrs. Williams' evidence is found to be very indefinite. As to when the remainder of the $1,500 was advanced to George H. Zimmerman, she has no recollection, and neither does she remember dates and amounts, nor the total advancements made. There is no evidence as to when repayment was contemplated by the parties. True, Mrs. Williams' claim is that prior to the date of the deed she advanced as loans to George H. Zimmerman "approximately $1,500, perhaps more." Seven checks totaling $710 are introduced in evidence, drawn by Mrs. Williams and payable to George H. Zimmerman, of various dates. These, she testifies, constituted a part of the moneys so advanced. Two of these checks, however, bear date prior to July 31, 1931; and on the last-named date she verified as plaintiff, under oath, a petition for divorce in which it was alleged: "Plaintiff does not have any money or property, either real or personal, * * * with which to support and maintain herself."

Mrs. Williams produced no records on the subject of the advancements made. One time she testified she made no records on that subject; at another time she says she had a record thereof, which was lost. Her testimony, as set forth in the record, is as follows: "Q. Did you loan any money to Mr. Zimmerman prior to 1931? A. I don't know. Q. By that you mean you don't remember? A. I don't remember. Q. Do you remember loaning him

money after 1931? A. I loaned him money, but the dates I can't tell you. Q. Nor the amounts, you can't tell them? A. No, sir."

It also appears that her deposition was taken on April 27, 1937, in which she testified as follows: "Q. Have you paid Mr. George Zimmerman any rent the last few months? A. The last few months? Q. Yes. A. No. Q. Do you owe him that? A. Yes. Q. How much do you owe Mr. Zimmerman for rent? A. $60." And, on cross-examination, she testified, viz.: "Q. What months do you owe rent for? A. I don't owe rents, but I owe the payments is what I mean. Q. What payments? A. The payments to the Home Owners Loan, I owe that. Q. You pay that? A. Yes. Q. How many months are you behind on that? A. Since September. Q. Of last year? A. Yes. Q. How much do you pay to the Home Owners Loan? A. $27.56 a month."

Mrs. Williams also testifies that she did not know the market value of No. 423 North Sixth street on the date the premises were conveyed to her; she says she knew there was a mortgage then upon the premises, but she did not then know the amount of this mortgage, or the amount unpaid thereon. And she also testified at the time of taking her deposition that she did not know who had the mortgage. She does not testify that she ever made a demand upon defendant Zimmerman for the repayment of the advancements claimed to have been made by her to him, or for any part thereof. And it also appears that during the continuance of these alleged loans Mrs. Williams paid Zimmerman approximately $1,000 on rents accruing to him, without any request to have the rents applied on his indebtedness to her. There is no evidence in the record from either of these parties as to the actual conversation or circumstances that caused the deed of conveyance to Mrs. Williams to be made, at the time when its existence would at least forestall the plaintiff herein in the collection of his judgment. The record wholly fails to establish the usual facts and circumstances that surround and evidence a *bona fide* transaction. It is obvious that the facts estab-

lished by the record, in view of the necessary inference which they sustain, amply support the judgment of the trial court as to the invalidity of the deed here in suit.

As to the adjudged invalidity of the written assignment as to the parties to this record: This involves the consideration of testimony given in open court in the presence of the trial court. This is an equity case and is here tried *de novo*.

"In equity actions involving questions of fact where there is an irreconcilable conflict in the evidence, in determining the weight of evidence this court will consider the fact that the trial court observed the witnesses and their manner of testifying." *Hole v. Hamp,* 134 Neb. 259, 278 N. W. 480.

Fraudulent intent may be established by proof of facts and circumstances from which such inference may be reasonably drawn. *Riggs v. Hroch,* 133 Neb. 260, 274 N. W. 598.

From a careful consideration of the entire record, we find the evidence therein contained ample to sustain the judgment of the trial court as an entirety, and the same is

AFFIRMED.