JAMES P. NEARY, APPELLANT, V. GENERAL AMERICAN LIFE INSURANCE COMPANY, APPELLEE.

1 N. W. (2d) 908

FILED JANUARY 9, 1942. No. 31235.

*John J. Gross,* for appellant.

*Frederick M. Deutsch, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action by James P. Neary, plaintiff and appellant, against General American Life Insurance Company, a corporation, defendant and appellee. The purpose of the action is to recover $1,867.81, claimed by plaintiff to be due on a policy of life insurance after, according to the terms of the policy, he had paid the 20 annual premiums. The $1,867.81 represents the difference between the claimed

face amount of the policy and a loan against it in the agreed amount of $132.19. There is a cross-action by the defendant, wherein the defendant set forth that there had been a mutual mistake in the writing of the insurance, and that in truth there was due and owing to the plaintiff the sum of $867.81, this being the difference between $1,000 and the agreed amount of the policy loan. The defendant prayed for reformation and judgment on the basis of reformation.

The trial court decreed reformation as prayed and rendered judgment in favor of the plaintiff and against the defendant for the sum of $867.81. From this decree and judgment the plaintiff has appealed.

On or about September 1, 1919, one H. H. Johnson, an agent of the International Life Insurance Company, called on plaintiff at his farm some miles from Ft. Pierre, South Dakota, and solicited him for life insurance. As a result a policy of life insurance was issued for $2,000, calling for annual premium of $60.24 for 20 years. The policy contained several options, among which were commuted value of $1,470 on proof of death, $100 a year to plaintiff during life after payment of premiums for 20 years, paid-up life insurance after 20 years in the amount of $1,452, loan and cash value of $928 at the end of 19 years, and by computation a loan and cash value of approximately $1,000 at the end of 20 years. As to the correctness of these provisions there is no question. There also appears the following provision: "On the 8th day of October 1939 (being the policy anniversary date on which the insured will have attained the age of sixty-five, nearest birthday) on surrender of this policy while in full force and effect, the company agrees to pay Two Thousand dollars in one sum to the insured or his assigns." The date and the words "Two Thousand" are typed in blank spaces, but the remaining words are a part of the printed form of the policy. It is the claim of the defendant that this obviously should have been one thousand rather than two thousand, and that in legal contemplation this was a mutual mistake.

As already indicated the policy was issued by the International Life Insurance Company. Later the Missouri State Life Insurance Company, a corporation, assumed liability on the policy, and still later the General American Life Insurance Company, a corporation, assumed liability thereon, hence the action against this defendant.

That a mistake was made by the insurance company is beyond question. It is inconceivable that the company intended a contract to pay to plaintiff $2,000 in cash at a time when it was shown by the plain computations on the policy that the cash or loan value was only one-half of that amount, that its commuted value at death was only $1,470, that its value as paid-up insurance was only $1,452, and that annual endowment payments to plaintiff, a man then of the age of 65 years, would be only $100 a year during life.

It is clear that the premium exacted was for a 20-payment policy of endowment insurance with endowment at the age of 65 years, with the options set forth in this policy, and with an agreement to pay $1,000 in one sum at the age of 65 years. In other words, plaintiff paid the regular rate of premium for a policy written as defendant contends this one should have been written.

The record indicates, though not conclusively, that no complete copy of the policy was retained by the company, but only a record of it which included a copy of the schedule of cash or loan values. It appears further that the error was never called to the attention of the company until after payment of the final premium when plaintiff made demand for payment of $2,000, less the loan against the policy.

The plaintiff contends as a matter of fact that it was understood by and between plaintiff and the agent of the International Life Insurance Company that he was to receive a policy of insurance that would require payment to him of $2,000 on payment of 20 annual premiums. This contention finds some support in the evidence. It is denied by the agent. On this question of fact it clearly appears

that the trial court found against the plaintiff. In this connection it is the rule that this court will, in an equity case, take into consideration the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version rather than the other of disputed facts. *Hole v. Hamp,* 134 Neb. 259, 278 N. W. 480; *Robinson v. Williams,* 136 Neb. 253, 285 N. W. 574. Independent of this rule it appears to us that, taking into consideration the testimony on this matter and coupling it with the things which are obvious in the policy itself, the defendant has sustained the burden of proof on this factual question.

In support of his assignments of error the plaintiff submits two important legal questions. First, he urges that an insurance policy will not be reformed for mistake if the period of incontestability has passed, and, second, that equity will not decree reformation of a contract on the ground of mistake, unless the mistake is shown to be mutual, and that the party seeking reformation was free from negligence.

In support of the first proposition plaintiff cites *Equitable Life Assurance Society v. Darr,* 64 S. Dak. 355, 266 N. W. 721. Just what was at issue in that case is not determinable from a reading of the two short paragraphs of that *per curiam* opinion, beyond the fact that the insurer sought to reform a policy on which premiums had been paid for eight years, for the reason that the policy involved was not the kind of policy the insured had applied for or the insurer had intended to sell. The question of reform after expiration of the period of incontestability was not discussed or referred to. If this case could be considered as determinative of the question presented, we would consider it binding here, since the contract of insurance being considered is a South Dakota contract.

On this question, in *Buck v. Equitable Life Assurance Society,* 96 Wash. 683, 165 Pac. 878, it was held: " 'The amount due,' in the language of this clause, can mean no other sum than the amount due in law and fact." This rule appears sound and equitable. An adherence to it pre-

serves, and takes away none of, the rights which were in the contemplation of the parties at the time the policy was written.

On the second question it is a fixed principle of law that equity will decree reformation of a contract on the ground of mistake only if the mistake is mutual, or for fraud or inequitable conduct. The rule in its application to insurance policies is succinctly stated and supported by many authorities in 29 Am. Jur. 237, sec. 241, as follows: "Reformation of an insurance policy may be had, in general, where, by reason of fraud, inequitable conduct or mutual mistake, the policy as written does not express the actual and real agreement of the parties. More particularly, if by inadvertence, accident, or mistake the terms of a contract of insurance are not fully or correctly set forth in the policy, it may be reformed in equity so as to express the actual contract intended by the parties, if the mistake is mutual or if there has been fraud or inequitable conduct by one of the parties to the contract."

Plaintiff urges that, to entitle one to reformation, such one must be free from negligence. On this proposition he cites the case of *Galva First Nat. Bank v. Reed*, 205 Ia. 7, 215 N. W. 732. That was a case for reformation of a contract relating to the alienation of title to real estate. In the opinion it is stated: "Another rule of law is that, in order to justify a reformation of a written instrument, the party asking the reformation must be free from negligence." This is respectable authority, but it represents the minority opinion on the subject. No case cited from any other jurisdiction supports this view and we have found none directly supporting it. Furthermore, all of the Iowa cases deal with neglect to examine deed, lease or exchange contract before signing, to see whether or not the intention of the parties was correctly expressed. On the other side of the proposition in cases, some of which are insurance cases similar to the one being considered here, we find that mere negligence will not defeat reformation.

In *Story v. Gammell*, 68 Neb. 709, 94 N. W. 982, it is

stated: "The rule, that the carelessness or negligence of a person in signing a written contract estops him from afterwards asserting that the writing does not truly express the agreement of the parties, does not apply in an action for relief on the ground that the contract was obtained by fraud or entered into by mutual mistake."

In *Columbian Nat. Life Ins. Co. v. Black,* 35 Fed. (2d) 571, it is stated: "It is claimed that the company was negligent in failing to discover the error, and attention is called to a statement on the policy reading: 'Examined by J. M. S.' Apart from the question whether negligence must be accompanied by prejudice, it is sufficient to say that negligence is not in itself a defense, else there would be no ground for reformation for mistake, as mistakes nearly always presuppose negligence."

In *Skelton v. Federal Surety Co.,* 15 Fed. (2d) 756, the court said: "Mere negligence, not amounting to the violation of a positive legal duty, does not prevent reformation, and especially if it appears that the other party has not been prejudiced thereby."

In *Mutual Life Ins. Co. v. Metzger,* 167 Md. 27, 172 Atl. 610, is found the following: "In the making of the error in the office of the insurer there would seem to have been no such negligence as defeats an application for reformation. There could hardly be a less negligent error, and the existence of negligence in even the slightest degree does not prevent reformation."

We are impelled by the force of reason and legal precedent to determine the question of negligence adversely to plaintiff.

Was the mistake mutual in a legal sense, or was it grounded in fraud or in inequitable conduct? Consideration of the question of fraud is not required. The record does not suggest it in the issuance of the insurance policy.

On the definition of mutual mistake as applied to insurance policies we quote from some of the reported cases:

*Columbian Nat. Life Ins. Co. v. Black, supra:* "While courts are properly reluctant to alter the terms of a written

engagement, even in equity, and do not do so unless the proof is clear and convincing, we are of the opinion that the uncontradicted and indisputable facts in this case require the interposition of equity. It is true the defendant on the stand and in his letters denies any mistake on his part. But his actions speak louder than his words. He applied for an ordinary life policy; without any quibble, and in response to his application, he received a policy that manifestly was in error. He only paid for an ordinary life policy. When he received the policy he either did or did not notice the error. If he did not notice it, the mistake was mutual. If he did notice it and said nothing, he was guilty of such inequitable conduct as to amount to fraud."

*Hibbard v. North American Life Ins. Co.*, 192 Wis. 315, 212 N. W. 779, from the syllabus: "Where an option for the cash surrender of such a policy was mistakenly written as exercisable at the end of ten instead of twenty years, so as to enable the insured to receive more than he paid in and more than double the amount printed in the table of cash surrender values for ten years, the option failed to express the intention of the parties and could not be enforced."

*Berry v. Continental Life Ins. Co.*, 224 Mo. App. 1207, 33 S. W. (2d) 1016, from the syllabus: "Where, through a clerical error, a twenty payment life insurance policy provided for too great a cash value at the end of twenty years, the mistake *held* mutual, entitling the insurer to have the policy reformed to meet the real intention of the parties to the contract unless it was barred by laches."

To the same effect are *Buck v. Equitable Life Assurance Society, supra; Rougon v. Equitable Life Assurance Society,* 146 La. 132, 83 So. 434; *United States Fidelity & Guaranty Co. v. Beckman,* 278 Mich. 516, 270 N. W. 770; *Mutual Life Ins. Co. v. Metzger, supra; Gray v. Supreme Lodge, Knights of Honor,* 118 Ind. 293, 20 N. E. 833; *New England Mutual Life Ins. Co. v. Jones,* 1 Fed. Supp. 984; *Hemphill v. New York Life Ins. Co.,* 195 Ky. 783, 243 S. W. 1040, and many other cases.

In the light of these definitive decisions we conclude that the mistake complained of by the defendant in its cross-action was, within legal contemplation, a mutual mistake, and one against which equity will grant relief by reformation.

The defendant has established its right to have reformation by the weight of evidence required of it, that is, by clear, convincing and satisfactory evidence, sufficient to overcome the strong presumption arising from the terms of the instrument that it correctly expresses the intention of the parties. See *Home Fire Ins. Co. v. Wood,* 50 Neb. 381, 69 N. W. 941; *Jacobson v. Forster,* 138 Neb. 452, 293 N. W. 336; *Beideck v. National Fire Ins. Co.,* 139 Neb. 171, 296 N. W. 873; *Severson v. Home Ins. Co.,* 51 S. Dak. 293, 213 N. W. 726.

The decree and judgment of the district court are

AFFIRMED.